UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NATALE COSENZA,                              )
                        Plaintiff            )
                                             )
v.                                           )        C.A. No. 18-CV-10936-TSH
                                             )
CITY OF WORCESTER, Massachusetts,            )
KERRY HAZELHURST, JOHN                       )
DOHERTY, T.J. COAKLEY, MARK                  )
RICHARDSON, ALLAN BURNES,                    )
DANIEL BENEDICT, BRIAN                       )
DONOHUE, ROBERT TURGEON, and                 )
AS-YET UNKNOWN WORCESTER                     )
POLICE OFFICERS,                             )
                        Defendants           )

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
## [LEAVE TO FILE REPLY GRANTED ON 8/22/18, DOC. 49]

Defendants, City of Worcester (City), Kerry Hazelhurst, John Doherty, T.J. Coakley,

Mark Richardson, Allan Burnes, Daniel Benedict, Brian Donohue and Robert Turgeon, hereby

reply to Plaintiff's Opposition (Doc. 47) to Defendants' Motion to Dismiss.   (Doc. 39).

Defendants move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiff's

Complaint for failure to state a claim upon which relief can be granted.

### 1.  Worcester Police Report Can Be Considered

Plaintiff takes issue with the Defendants' citation and attachment of the police report in

support of their Motion to Dismiss.  "When ... a complaint's factual allegations are expressly

linked to—and admittedly dependent upon—a document (the authenticity of which is not

challenged), that document effectively merges into the pleadings and the trial court can review it

in deciding a motion to dismiss under Rule 12(b)(6)."  Beddall v. State St. Bank & Trust Co.,

137 F.3d 12, 16–17 (1st Cir. 1998); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d

315, 321 (1st Cir. 2008) (also citing Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d

24, 32 (1st Cir. 2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court "may

properly consider the relevant entirety of a document integral to or explicitly relied upon in the

complaint, even though not attached to the complaint" (internal quotation omitted)); see also

Jacobs v. Soars, No. CIV.A. 14-12536-LTS, 2014 WL 7330762, at *1 (D. Mass. Dec. 19, 2014)

(considering a motor vehicle crash police report, a document attached by the defendants as an

exhibit in support of a motion to dismiss, as falling within the exception for integral and

referenced documents, as well as the public record exception).  Documents central to a plaintiff's

claims, sufficiently referred to in the complaint, or matters of public record can be used in a

motion to dismiss context without converting the motion to a request for summary judgment, and

a police report can be considered as a public record in this context.  See id.; Watterson v. Page,

987 F.2d 1, 3 (1st Cir. 1993).

Here, Plaintiff does not dispute the authenticity of the police report; that is, Plaintiff does

not argue that what Defendants attach as Exhibit 1 to Doc. 40 is not the actual police report.

Plaintiff also refers in detail to the Worcester Police Department (WPD) investigation in the

Amended Complaint, Doc. 4, and the police report is the primary document that memorializes

and summarizes that investigation.   Thus, it is clear that the police report is integral, if not

explicitly relied upon, to the Amended Complaint, and, therefore, can be considered by the Court

in evaluating Defendants' Motion to Dismiss.  See Clorox Co. P.R., 228 F.3d at 32.  Although

Plaintiff alleges in his Opposition that the police "falsely described the identification procedures

and M.H.'s statements" in the reports, (Doc. 47 at p. 5), Defendants do not necessarily rely on

the report for the truth of these matters.  Defendants cite to the report to show the sequence of

events and involvement of particular officers and officials at the various stages of the

investigation, primarily since Plaintiff's Amended Complaint is not clear, and is devoid of facts

in relation to the individual Defendants Burnes, Turgeon, Benedict, Donohue, Coakley and

Richardson,[1] that had any involvement in the allegedly false identification through the photo

---

[1] The Court's review of a plaintiff's complaint is not to assess the viability of a plaintiff's claim against any defendant, but to review whether a plaintiff has offered sufficient allegations to render each defendant a "plausible defendant."  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 16 (1st Cir. 2011).  As argued in section III(B) of

array of the Plaintiff, nor his later arrest, indictment and conviction.  (See Doc. 4 at ¶ 6.)  (See Doc. 40 at 15-17.)

### 2.    Prior Court Decisions Must Be Considered And Given Preclusive Effect

Plaintiff also argues that the Court should not consider factual findings in prior state and federal court decisions and attempts at obtaining post-conviction relief, on the grounds that they were not "final judgments" because he was granted a new trial.  However, "matters of public record ordinarily include documents from prior state court adjudications," which are proper to consider in weighing a motion to dismiss, in particular with regard to the preclusive effect of those decisions.  Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008); Gedeon v. Springfield, No. 3:15-CV-30062-KAR, 2016 WL 4727442, at *1 n.2 (D. Mass. Sept. 9, 2016).  "Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered."  Giragosian, 547 F.3d at 63 (quoting In re Sonus Networks, Inc., 499 F.3d 47, 56 (1st Cir. 2007)).  In Massachusetts, *res judicata* includes both claim and issue preclusion. Giragosian, 547 F.3d at 63.  "Claim preclusion prevents the relitigation of all claims that a 'litigant had the opportunity and incentive to fully litigate ... in an earlier action.'"  Id. (quoting In re Sonus Networks, Inc., 499 F.3d at 56).  "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action."  Heacock v. Heacock, 402 Mass. 21, 23 (1988). Issue preclusion forecloses relitigation on issues of fact that were actually litigated and determined in a prior action and the determination was essential to the decision in the prior action.  Id. at 25; see also Garcia-Monagas v. De Arellano, 674 F.3d 45, 50 (1st Cir. 2012).  The federal court decisions for habeas corpus and the certificate of appealability also have preclusive effect.  See Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999).

---

Defendants' Memorandum, Doc. 40, Plaintiff's failure to specify claims against each Defendant requires dismissal of the Amended Complaint.

Issue preclusion applies to § 1983 actions and there was no expressed legislative intent in the civil rights statute to limit the application of rulings in a criminal case to a civil suit. Allen v. McCurry, 449 U.S. 90, 103–04 (1980).  In Allen, the Supreme Court held that that the defendant police officers could raise a collateral estoppel defense to § 1983 suit for damages when the plaintiff's motion to suppress based on the Fourth and Fourteenth Amendments for allegedly unconstitutional search and seizure was denied in part (for the evidence in plain view) by the trial court. Id. at 92.  Allen had petitioned the federal court for habeas corpus relief, but was denied because he did not assert that the state courts had denied him a "full and fair opportunity" to litigate his search and seizure claim. Id. at 91.  The Supreme Court held that the state court ruling on the suppression, as a full and fair opportunity to litigate those constitutional claims, precluded the plaintiff from raising the constitutional claims in the federal civil suit. Id. at 105.

The First Circuit Court of Appeals has followed and applied the preclusive effect of state court decisions in criminal cases to § 1983 suits, even if a criminal conviction has been nullified. See Echavarria v. Roche, No. 16-CV-11118-ADB, 2017 WL 3928270, at *9 (D. Mass. Sept. 7, 2017); Johnson v. Mahoney, 424 F.3d 83, 96 (1st Cir. 2005).  In Johnson, when the prosecutor filed a *nolle prosequi* in light of new evidence exonerating the plaintiff after he served five years of his prison sentence for first-degree murder, Johnson filed a civil § 1983 suit against Boston police officers and others, alleging that the police withheld exculpatory evidence at his trial. Id. The First Circuit held that where the plaintiff's constitutional deprivation claim in the § 1983 suit relied upon the allegation that the withheld evidence was not only exculpatory, but resulted in prejudice, and the SJC necessarily reviewed the underlying constitutional principles, holding he was not prejudiced by the discovery error, his claim in the § 1983 suit was estopped by the SJC's earlier determination. Id. at 91, 95-6.

Similar to the present case, in Echavarria, the Massachusetts Superior Court ruled that the plaintiff, after spending twenty-one years in prison on charges that included first-degree murder,

was entitled to a new trial due to ineffective assistance of counsel.  Following that decision, the

Commonwealth entered a *nolle prosequi*, dropping the charges against the plaintiff.  Even

though the conviction was no longer imposed, the federal court held that where the "SJC

recognized the constitutional implications of Plaintiff's challenge to the identification procedure,

and nevertheless ruled against him on this issue," issue preclusion prevented the plaintiff from

arguing in the civil rights case that the pre-trial identification of one of the witnesses was unduly

suggestive.  Echavarria, 2017 WL 3928270, at *9.

Here, although Plaintiff's conviction no longer stands, as in Johnson and Echavarria, this

Court must look to the preclusive effect of prior court decisions in Plaintiff's criminal case.

There is no doubt that Plaintiff fully litigated his claims in challenging his conviction, first in the

Superior Court, then in the Massachusetts Appeals Court, the SJC, and twice in the federal court.

Issue preclusion allows this Court to consider facts and issues already litigated, as indicated in

those prior decisions.[2]  See Heacock, Garcia-Monagas.  Any failure to raise those issues in the

criminal case now means that Plaintiff is precluded from raising the issues in this civil case and

asserting the due process claim in Count I.  Failure to find preclusion would be a failure to afford

"full faith and credit" pursuant to 28 U.S.C. § 1738 to the state court decisions and contrary to

the substantial precedent that issues decided in the criminal matter can preclude claims in a §

1983 civil suit.  See Echavarria, 2017 WL 3928270, at *9; Giragosian, 547 F.3d at 66; Johnson,

---

[2] The Superior Court and Appeals Court addressed Plaintiff's due process rights in the context of the identification procedure, the allowance of expert testimony on the issue, the evidence of the lack of the DNA match for the shorts, testimony regarding the shorts and neighbor's testimony regard Mr. Cosenza's access to the victim's building, finding no error and no substantial risk of a miscarriage of justice. (See Exhs. 3, 4.)  In Plaintiff's habeas corpus petition, the federal court found that there was no decision by the state court with regard to the identification that was unreasonably contrary to Supreme Court precedent; and for the certificate of appealability, that there was no substantial showing of a constitutional violation. (See Exhs. 6, 7.)  The Superior Court was clear that there was no error *per se*, no constitutional violation in the initial proceedings, and no misconduct on the part of the police - only that because of the evolution of identification evidence and the acceptance of expert testimony on the topic, that Mr. Cosenza was entitled to a new trial and the suppression.[2] (See *e.g.*, Exh. 8 at 11 (explaining that a new trial can be granted event without a finding of error).)  With regard to the chair rung, fingerprints on the window, and the allegation in this civil suit that the officers "fabricated" the description and identification of the attacker, (Doc. 4 at ¶¶ 9-12, 29, 30), Mr. Cosenza had a "full and fair opportunity" to raise the issues pre- and post-trial in the criminal matter.

424 F.3d at 96; <u>Davis v. Schifone</u>, 185 F. Supp. 2d 95, 101 (D. Mass. 2002); <u>Allen</u>, 449 U.S. at

103–04.[3]  Thus, Count I, a claim of due process violations, is precluded and should be dismissed.

**3. Qualified Immunity Is Dispositive Of Plaintiff's Claims Regarding The Identification Procedure**

Plaintiff argues that because the state law on eyewitness identification procedures

changed more than a decade after Plaintiff's criminal investigation, as in <u>Gomes</u>, 470 Mass. at

376, not the federal law, Defendants are not entitled to qualified immunity.  However, Plaintiff

misses the point that the lineup procedure was not unduly suggestive *per se* – his attempts at

post-conviction relief were repeatedly denied by the state courts and the federal courts.  It was

only the change in the Massachusetts case law that led the Superior Court judges in 2016 and

2017 to first grant Plaintiff a new trial and then suppress the identification on the basis that,

under the recent legal developments, justice may not have been done and the identification was

"unnecessarily suggestive."  <u>See</u> Doc. 40, Exh. 8 at 9 (stating that the "trial judge's ruling [in

2002] that expert testimony would not 'assist the jury in its evaluation of the identification' was

consistent with the decisions of that time.")  Thus, it is inconsistent for Plaintiff to file a § 1983

suit only after, and based upon, the Superior Court rulings in 2016 and 2017, but argue that the

identification procedure was unconstitutional "long before 2000."  If Plaintiff had additional

grounds to challenge the eyewitness identification based on constitutional violations in his

criminal case, it is certain he would have done so.  Indeed, in deciding Plaintiff's petitions for

post-conviction relief prior to 2016, the state and federal courts repeatedly rejected Plaintiff's

claims that any violations occurred.  (Doc. 40 at Exhs. 3-7.)

Thus, a reasonable police officer in 2000 would have believed his actions were lawful in

light of clearly established law at the time of the identification.  <u>See</u> <u>Maldonado v. Fontanes</u>, 568

---

[3] Although Defendants take issue with Plaintiff's allegation that Defendants have not fully developed various arguments within their thirty-five page memorandum, Defendants note that Plaintiff mistakenly cites First Circuit cases standing for the proposition that arguments not made in a party's <u>opening brief on appeal</u> are deemed waived.  <u>See</u>, *e.g.*, <u>Vazquez-Rivera v. Figueroa</u>, 759 F.3d 44, 47 (1st Cir. 2014) (Plaintiff's Opposition at 15).

F.3d 263, 269 (1st. Cir. 2009).  Plaintiff argues that "[q]ualified immunity is concerned only with

whether Defendants' conduct was clearly unconstitutional in 2000," (Doc. 19), that it does not

matter that Defendants could not have known that their conduct violated clearly established law,

a change that came about over a decade later.  However, "[t]he relevant dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted . . . [and] whether [the

defendant had] fair warning that his particular conduct was unconstitutional."  Maldonado, 568

F.3d at 269 (citations omitted).  Qualified immunity applies because it was not clear to Detective

Hazelhurst that any conduct with regard to the identification procedure was unlawful and he did

not have fair warning that anything he did in the identification process was unconstitutional.[4]

Defendants are not "expected to predict the future course of constitutional law."  Wilson v.

Layne, 526 U.S. 603, 617 (1999) (quoting Procunier v. Navarette, 434 U.S. 555, 562 (1978)).

Thus, Defendants are entitled to qualified immunity from liability with regard to the eyewitness

identification process alleged in Count I.

4.      **Estoppel And Qualified Immunity Also Apply To Bar Plaintiff's Federal Malicious Prosecution Claim**

For the malicious prosecution claim, Count II, Plaintiff has to show in part that he was

seized pursuant to legal process, unsupported by probable cause.  Almeida v. Rose, 55 F. Supp.

3d 200, 203 (D. Mass. 2014); Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99-101 (1st Cir. 2013)).

Mr. Cosenza already raised issues regarding lack of probable cause and insufficiency of evidence

to identify him as the perpetrator due to the allegedly defective photo array in his criminal

appeals, and his conviction was repeatedly affirmed by both the state and federal courts,

decisions which should be given preclusive effect as argued, *supra*.   The Appeals Court

---

[4] To clarify, Defendants do not assert a qualified immunity argument with regard to the alleged fabrication and suppression of evidence, as there is no evidence that Defendants committed such violations, claims that were raised or could have been raised during Plaintiff's criminal case, and subject to preclusion and estoppel, as argued, *supra*.  See Giragosian, 547 F.3d at 66.  It is true that the constitutional rights with regard to fabrication and suppression of evidence were clearly established long ago.  See Limone v. Condon, 372 F.3d 39, 44-5 (1st Cir. 2004) (stating that the rights were clearly established in 1967).

described the corroborating evidence to the eyewitness identification:  that the defendant had been seen accessing the victim's apartment building, had previously knocked on the victim's door seeking money, had fled from police on his bicycle the day after the incident and had not been seen by police in his apartment after the incident despite many visits. (Doc. 40, Exh. 4 at *2.)  Further, there is nothing to indicate that at the time of the photo array in 2000, the photo identification rose to the level of a constitutional violation.  Therefore, just like in Almeida, Plaintiff's malicious prosecution claim must be dismissed.

Alternatively, it is clear that Plaintiff's malicious prosecution claim is barred by qualified immunity.  See Echavarria, 2017 WL 3928270, at *8.  Plaintiff ignores the cases on the issue that have repeatedly determined that in the First Circuit, "a Fourth Amendment right to be free from malicious prosecution was not clearly established until 2013."  Id. (holding that because malicious prosecution was alleged to have occurred in or before 1996, the officers were entitled to qualified immunity); Williams v. City of Boston, No. 10-CV-10131-PBS, 2012 WL 5829124, at *10 (D. Mass. Sept. 21, 2012) (holding that because the constitutional right to be free from malicious prosecution was not clearly established in 2002 (the year of the arrest at issue), the defendant police officers were entitled to qualified immunity for § 1983 claim).  Since Plaintiff here also alleges police engaged in malicious prosecution on or before his conviction in 2002, the right was not clearly established, and Defendants are entitled to qualified immunity from the malicious prosecution claim, Count II.

## 5.   Conspiracy (Count III) Has Not Been Sufficiently Pled

In the present action, Plaintiff's Amended Complaint fails to state the requisite specific factual basis supporting the existence of a conspiracy among any of the Defendants. See Diaz et al. v. Devlin et al., 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (this Court held that "other than those legal conclusions which as a matter of law are insufficient to state a claim, the Complaint does not contain any allegations that would support an inference that there existed a concrete

agreement between the officers involved in the investigation to inflict any injury on or violate the

rights of Plaintiffs" and allowed the claims against a police officer defendant to be dismissed);

McGillicuddy v. Clements, 746 F.2d 76, 77-78 (1st Cir. 1984) (conspiracy allegations insufficient

in absence of specific allegations; it is inadequate to allege that defendants acted jointly in

concert).   Plaintiff's Amended Complaint does not state with any specific factual basis the

existence of a conspiracy involving Defendants, an agreement by Defendants to the alleged

conspiracy, how the Defendants' alleged agreement resulted in harm to Plaintiff, or that the

alleged conspirators shared the same objective.  Id.  Plaintiff asserts only a conclusory allegation

without any factual basis.   Further, the claims as discussed are inadequate to show that the

officers inflicted a constitutional injury, either because the claims are not sufficient as a matter of

law, or because the officers are entitled to qualified immunity.   Accordingly, Plaintiff's

conspiracy claim (Count III) must also be dismissed.

### 6.   Failure To Intervene (Count IV) Is Not A Viable Cause Of Action

Other than Plaintiff's legal conclusions and threadbare recital of the elements of the

claim, the factual allegations of Plaintiff's Amended Complaint fail to establish the necessary

elements to maintain a plausible cause of action for a failure to protect or intervene against the

Defendants, that they had a "reasonable opportunity," or "the means and the opportunity," to

prevent the alleged due process violation.  Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12,

16 (1st Cir. 2011) ("[W]e must determine whether, *as to each defendant*, a plaintiff's pleadings

are sufficient to state a claim on which relief can be granted… ." (quotation omitted; emphasis in

original)).   Therefore, the claim against the Defendants is insufficiently pled.   Even if Plaintiff

had stated a proper claim for failure to intervene in the alleged due process violations, a

constitutional violation for failure to intervene in a context other than excessive force has not

been established in the First Circuit.  See Walker v. Jackson, 952 F. Supp. 2d 343, 351-2 (D.

Mass. 2013).  Therefore, the police officer defendants are entitled to qualified immunity with

regard to Plaintiff's claim for failure to intervene, Count IV.  See id. at 352.

   **7.  Allegations Against City Of Worcester Are Barred**

   Plaintiff alleges that "Defendant City of Worcester is therefore liable for all torts

committed by these [individual] Defendants pursuant to the doctrine of *respondeat superior*."

(Doc. 4 at ¶ 17.)  However, as the Court has properly found in another case, "to establish

municipal liability, a plaintiff must show that 'the municipality itself causes the constitutional

violation at issue.  *Respondeat superior* or vicarious liability will not attach under § 1983.'"

Williams v. Bisceglia, 115 F. Supp. 3d at 184, 188 (D. Mass. 2015) (quoting City of Canton v.

Harris, 489 U.S. 378, 387 (1989)).

   Here, Plaintiff alleges only in generalities that the City was responsible for policies and

practices that led to the constitutional violations.  The allegations are similar to a "final

authority" theory of liability found to be properly dismissed against the Town of Hudson in

Freeman v. Hudson, 714 F.3d 29, 38 (1st Cir. 2013).  Although Plaintiff argues in his Opposition

that this case is different than Freeman, Plaintiff only references in approximately the last

paragraph of each count of the Amended Complaint that the alleged constitutional violation was

"undertaken pursuant to the policies, practices and customs of Defendant City of Worcester …

and final policymakers … ."  (Doc. 4, ¶ 117; see also ¶¶ 95, 104, 111.)  There is no reference to

"state or local laws establishing the policymaking authority of any individual or group of

individuals.  The complaint alleges misconduct from many separate actors, but gives no guidance

about which acts are properly attributable to the municipal authority."  Freeman, 714 F.3d at 38.

Thus, the complaint fails to state more than *respondeat superior* liability, liability based solely

on the employment of an alleged tortfeasor, which is not enough to support a § 1983 action.  Id.

Further, there is nothing more than a single incident alleged in relation to Plaintiff's

investigation, which cannot support a custom, practice or policy of deliberate indifference.

McGrath v. McDonald, 853 F. Supp. 1, 4 (D. Mass. 1994).  Plaintiff's failure to set forth a

factually plausible cause of action for supervisory liability requires the dismissal of all counts

against the City.

### 8. Claims Against The City Are Precluded By The Massachusetts Tort Claims Act, G. L. c. 258

Although Plaintiff argues in the opposition that he has not pled any state law claims that

would be precluded under the Massachusetts Tort Claims Act (MTCA), casting the claims in

terms of federal torts does not escape the application of municipal immunity; the mere fact that

Plaintiff has named the City, a public employer under the MTCA, as a defendant, implicates the

MTCA unless an exception to immunity applies.  See Moreau v. Gerardi, No. CIV.A. 08-40117-

FDS, 2010 WL 4961676, at *12 (D. Mass. Nov. 24, 2010); Sheehy v. Town of Plymouth, 948 F.

Supp. 119, 122 (D. Mass. 1996); Morrissey v. New England Deaconess Ass'n--Abundant Life

Communities, Inc., 458 Mass. 580, 588 (2010).  Pursuant to the MTCA, the City cannot be liable

for negligence based on allegations of intentional torts by an employee, pursuant to G. L. c. 258,

§ 10(c). Where Plaintiff states no specific allegation about conduct on the part of the City that

precedes the alleged intentional tort, the claims must be dismissed.  See Moreau, 2010 WL

4961676, at *12.  Likewise, the City is immune from liability for alleged failure to investigate

criminal conduct, pursuant to the discretionary function exemption of G. L. c. 258, § 10(b).  Sena

v. Commonwealth, 417 Mass. 250, 256-7 (1994).  Finally, Plaintiff's claims against the City are

also barred by the "original harm" exception to municipal liability in c. 258, § 10(j), as the claim

against the City is a failure to prevent a harm.  Ward v. Boston, 376 F. Supp. 2d 7, 16 (D. Mass.

2005) ("Claims of failure to train or supervise are all claims based on the failure to prevent or

mitigate a harm, rather than the participation in the initial injury-causing circumstance and thus

are barred by § 10(j)") (quotation omitted).  Just as there is no specific conduct providing a

causal link for supervisory liability in the federal civil rights context, there is no affirmative act

set forth in the Complaint to allege involvement of the City in the initial injury-causing scenario

necessary to proceed with tort claims against the City.  See Saldivar v. Racine, 818 F.3d 14, 21

(1st Cir. 2016).

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed against all

Defendants on all counts.

> CITY OF WORCESTER, KERRY
> HAZELHURST, JOHN DOHERTY,
> T.J. COAKLEY, MARK RICHARDSON,
> ALLAN BURNES, DANIEL BENEDICT
> BRIAN DONOHUE and
> ROBERT TURGEON
>
> By their attorneys,
> David M. Moore,
> City Solicitor
>
> */s/ Wendy L. Quinn*
> Wendy L. Quinn (BBO#653954)
> Kevin M. Gould (BBO#661545)
> Assistant City Solicitors
> 455 Main Street, Room 301
> Worcester, MA  01608
> (508) 799-1161
> quinnwl@worcesterma.gov

## CERTIFICATE OF SERVICE

I, Wendy L. Quinn, hereby certify that, on this 22nd day of August, 2018, the within Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss was served upon all counsel of record through this Court's electronic filing system as identified on the Notice of Electronic Filing.

> */s/ Wendy L. Quinn*
> Wendy L. Quinn
> Assistant City Solicitor