_____
)
**NATALE COSENZA**                                )
)                          **CIVIL ACTION**
**Plaintiff,**         )
)                          **NO. 18-10936-TSH**
**v.**                    )
)
**CITY OF WORCESTER, Massachusetts,**   )
**KERRY HAZELHURST, JOHN**            )
**DOHERTY, T.J. COAKLEY, MARK**       )
**RICHARDSON, ALLAN BURNES,**         )
**DANIEL BENEDICT, BRIAN DONOHUE,**   )
**ROBERT TURGEON, and AS-YET**        )
**UNKNOWN WORCESTER POLICE**          )
**OFFICERS**                           )
)
**Defendants.**        )
_____ )

### ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Docket No. 39)

**January 2, 2019**

**HILLMAN, D.J.**

Natale Cosenza ("Plaintiff") brought this action asserting various claims against Kerry Hazelhurst, John Doherty, T.J. Coakley, Mark Richardson, Allan Burnes, Daniel Benedict, Brian Donohue, Robert Turgeon, as-yet unknown Worcester Police Officers, and the City of Worcester ("Defendants") for violations of Due Process (Count I), Federal Malicious Prosecution (Count II), Conspiracy to Deprive Constitutional Rights (Count III), and Failure to Intervene (Count IV), all pursuant to 42 U.S.C. § 1983. Defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted (Docket No. 39). For the reasons state below, Defendants' motion is ***granted*** in part and ***denied*** in part.

### Background

*1. The Attack*

The following facts are taken from Plaintiff's Amended Complaint and assumed to be true at this stage of the litigation.[1]

On August 14, 2000, a woman named M.H. awoke in her bedroom in Worcester, Massachusetts to a man wearing only a t-shirt, underwear, and a cloth wrapped around his head standing at the foot of her bed. When M.H. asked him what he was doing there, he attacked her, beating her with a wooden object. As he climbed on top of her, she kicked and screamed causing her attacker to flee. The attack occurred at 4:00 a.m. and M.H.'s blinds were closed.

She immediately called 911. Her initial description was only that her attacked was a white male, that he did not have hair, and what he was wearing. She repeatedly emphasized that she had never seen her attacker before. Defendants Burnes, Turgeon, Benedict, and Donohue then arrived

---

[1] Defendant argues that this court should take judicial notice of both the Worcester Police Report and the factual findings in past court proceedings. Regarding the police report, Defendant argues that Plaintiff incorporates the police report by reference to his Amended Complaint. I find, however, that the report is not "sufficiently referenced" in Plaintiff's Amended Complaint to warrant incorporation. *Freeman v. Hudson*, 714 F.3d 29, 36-37 (1st Cir. 2013). The First Circuit has made clear that the "mere mention of the [police reports] in the complaint does not amount to sufficient reference." *Id.* at 36; *see also Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985) ("[L]imited quotation does not constitute incorporation by reference."). As for the prior opinions, while this Court may take judicial notice of judicial decisions, "[t]aking judicial notice of a decision in another court . . . is not the same as taking judicial notice of a fact within the decision. Thus, even when a copy of a judicial decision is placed in the record, it is not evidence nor is it fact." *Lopes v. Riendeau*, 177 F. Supp. 3d 634, 667 (D. Mass. 2016) (quotation marks and citation omitted); *see also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—*not for the truth of the facts recited therein*, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."); *Oveissi v. Islamic Republic of Iran*, 879 F. Supp. 2d 44, 50 (D.D.C. 2012) ("[I]t cannot be said that" factual findings in a prior proceeding "are not subject to reasonable dispute. Specifically, such findings represent merely a court's probabilistic determination as to what happened, rather than a first-hand account of the actual events.") (quotation marks and citation omitted). Thus, I will rely only on Plaintiff's Amended Complaint for the factual background for the purposes of this motion.

on the scene.  M.H. was not able to provide any further description of her attacker and again repeated that she had never seen the man before.

## 2. *Identification*

Later that morning, Defendants Burnes, Turgeon, and Benedict canvased M.H.'s apartment complex to look for witnesses.  They could not find anyone who could identify the assailant but discovered that Plaintiff lived in a different building of the apartment complex.  Defendants knew Plaintiff because of his past struggles with drug addiction and were not fond of him.  At the time of the investigation, Plaintiff was on probation for drug offenses.  In fact, Worcester police had been trying to find him in connection with a purported probation violation but had not located Plaintiff perhaps because he had been in an inpatient treatment program and had not been in contact with police.

Defendants spoke to a neighbor of M.H., who falsely alleged that Plaintiff had stolen his motorbike.  According to Plaintiff, he had helped the neighbor recover the stolen motorbike and when the neighbor refused to pay the promised reward, a dispute ensued between the two.  Because of this disagreement, the neighbor told Defendants he suspected Plaintiff had attacked M.H.  Defendants knew that the neighbor's suspicion of Plaintiff stemmed from the motorbike dispute.  Nonetheless, Defendants cited the neighbor's lead as a reason to suspect Plaintiff in the attack.  According to Plaintiff, this was simply pretext.  Once Defendants learned Plaintiff lived in the complex, they decided Plaintiff was the perpetrator, stopped looking for the true attacker, and reverse-engineered the investigation to implicate him.

More than 24 hours after the attack, Defendants Hazelhurst and Doherty met with M.H.  Defendants utilized a suggestive photo array which caused M.H. to identify Plaintiff.  Instead of using photos that matched M.H.'s description of the perpetrator (which Plaintiff did not match),

they showed a photo of Plaintiff and two other men that closely resembled him. The array therefore gave M.H. a choice between Plaintiff—who she had seen before because he lived in the apartment complex—and two strangers. Notably, M.H. previously described her attacker as having no hair whereas Plaintiff did have hair.

Moreover, Defendants assembled the array knowing the attack occurred in a dark bedroom, while M.H. was covering her face and eyes, and that the attacker had something around his head. Plaintiff alleges that it follows that Defendants knew M.H.'s identification was highly likely to be inaccurate and that she would be susceptible to suggestive techniques.

Before M.H. reviewed the photos, Defendants stressed that M.H. had to identify someone in the array for the case to proceed. During the identification procedure, Defendants Hazelhurst and Doherty told M.H. Plaintiff's name and that he lived in her apartment complex. Plaintiff contends this was done to suggest to M.H. whom they believed was the perpetrator among the nine photographs. M.H. subsequently identified Plaintiff and Defendants Hazelhurst and Doherty told her that she correctly identified the perpetrator.

Thereafter, M.H.'s description of her attacker predictably became more detailed. In short, the description suddenly sounded like Plaintiff. For the first time, M.H. noted that her attacker had a "familiar face" despite the fact she had previously said the exact opposite. Also unsurprisingly, M.H. became convinced Plaintiff was her attacker. She repeated her identification of him during his criminal proceedings and her eye witness account implicated him in the crime.

### 3. *Destruction of Evidence*

Defendants recovered part of a chair rung from M.H.'s bedroom, presumably the wooden object her attacker used to beat her. Before fingerprint and forensic evidence could be developed, however, Defendant Donohue and other Defendants allowed it to be destroyed. Further,

Defendants also found fingerprints that the attacked left on the window where he entered the apartment. Defendants similarly allowed that evidence to be destroyed.

Further, after the attack a pair of men's shorts were found that did not belong to M.H. or anyone else who had lawfully been in her apartment. Defendants believed that the shorts belonged to the perpetrator as he had already stripped down to his underwear when M.H. awoke and fled before getting dressed. The shorts also contained semen which the Defendants tested. When the genetic profile did not match Plaintiff, Defendants manipulated details to make it appear the shorts did not belong to the true attacker.

Plaintiff argues that this evidence was destroyed or manipulated in bad faith in order to frame Plaintiff for a crime he did not commit.

### 4. Conviction and Exoneration

Plaintiff was tried for armed burglary, assault and battery with a weapon, and assault with the intent to rape. He was acquitted of assault with intent to rape but convicted of the other chargers and sentenced to 12 to 20 years in prison.

On May 31, 2016, the Superior Court granted Plaintiff a new trial. After an evidentiary hearing, the court suppressed M.H.'s identification as the "procedure was unduly suggestive." On November 14, 2017, the Commonwealth subsequently dropped all charges.

### Standard

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

### Discussion

#### 1. Sufficiency of Allegations

##### a. Individual Defendants

Defendants argue that the factual allegations of Plaintiff's Amended Complaint fail to establish a plausible claim against Defendants Burnes, Turgeon, Benedict and Donohue. Plaintiff argues that Defendants conspired to violate his rights and that at this stage of the litigation he is not required to know the intimate details of that conspiracy.

In a Section 1983 case, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937 (2009);

*see also Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) ("Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation." (quotation marks and citation omitted)). Thus, "we must determine whether, *as to each defendant*, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009) (emphasis in original); *see also Maldonado v. Fontanes*, 568 F.3d 263, 275 (1st Cir. 2009) ("Indeed, supervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation." (quotation marks and citation omitted)).

However, when the circumstances are such that it is unlikely for a plaintiff to know some material facts, courts have applied a more lenient pleading standard. *See e.g.*, *Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016) ("[I]n some cases in which a material part of the information needed is likely to be within the defendant's control, some latitude may be appropriate in applying the plausibility standard." (citation omitted)). In such cases "it is reasonable to expect that 'modest discovery may provide the missing link' that will allow the appellant to go to trial on her claim." *Garcia-Catalan v. U.S.*, 734 F.3d 100, 105 (1st Cir. 2013) (quoting *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012)).

Courts have applied this more lenient standard in cases like this one where the defendants are part of a group and the circumstances are such that it is unlikely a plaintiff would be able to identify specific defendants responsible for each injury before discovery. In *Echavarria v. Roach*, for instance, the court noted "[i]n this case, Plaintiff is not attempting to claim that all Defendants are liable for the actions of a few; rather, Plaintiff asserts he is unable to know, without further discovery, which Defendant committed or participated in which particular act." 2017 WL

3928270, at *3 (D. Mass. Sept. 7, 2017). The court then went on to find "the complaint contains sufficient factual detail to indicate a plausible claim for relief and to put Defendants on notice of the claims being made against them." *Id.* at *4; s*ee also Cuadrado v. Wall*, 2010 WL 1499589, at *2 (D.R.I. Mar. 9, 2010) (concluding that while "it is not clear from the Complaint which two officers allegedly gouged plaintiff's eyes . . . or which officers were included in the 'they' in plaintiff's allegation" that the officers kicked him, "such level of specificity is not required to show that the pleader is entitled to relief or to provide Defendants fair notice of the claims against them."), *report and recommendation adopted*, 2010 WL 1372700 (D.R.I. Apr. 5, 2010); *Mitchell v. Rappahannock Reg'l Jail Auth.*, 703 F. Supp. 2d 549, 559 (E.D. Va. 2010) (denying motion to dismiss even though complaint referred to "all defendants" and failed to specific which defendants were responsible for specific incidents); *Carter v. Newland*, 441 F. Supp. 2d 208, 213-14 (D. Mass. 2006) (permitting complaint that described "collective actions or omissions" of defendants to proceed to discovery, "although thin on detail," since it provided sufficient notice to defendants); *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) (holding that "[i]f a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous," and explaining that this principle applies "to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery.").

Here, Plaintiff has "identified a discrete group of Defendants that he reasonable believes participated in the conduct that forms the basis of his claims." *Echavarria*, 2017 WL 3928270, at

*4. At this stage in the litigation, nothing more is required in order to proceed to discovery as the information he seeks is in the sole control of Defendants.

### b. *Monell* Claims

Defendant City of Worcester argues that Plaintiff has not sufficiently pled its *Monell* claim. Although "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," § 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691-92, 98 S.Ct. 2018 (1978). Thus, to succeed, "a plaintiff must show that the violation occurred as a result of the municipality's 'policy or custom.'" *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (quoting *Monell*, 436 U.S. at 694).

In his Amended Complaint, Plaintiff alleges that the City of Worcester had policies, practices, and deficient training procedures that caused individuals suspected of criminal activity, such as Plaintiff, to be subjected to manipulated and distorted lineup procedures, deprived of exculpatory evidence, subjected to criminal proceedings based on false evidence, and deprived of their liberty without probable cause. (Docket No. 4, ¶¶ 88-90). According to Plaintiff, these procedures were promoted by leaders, supervisors, and policy makers in Worcester. *Id.* ¶ 91. Consequently, these "widespread practices . . . were so well settled as to constitute the de facto policy of the City of Worcester." *Id.* ¶ 92. In addition, "the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Worcester and the Worcester Police Department, or were actually committed by persons with such final policymaking authority." *Id.* ¶ 93. Finally, Plaintiff alleges that these "policies, practices, and customs . . . were the moving force behind" the violations of Plaintiff's constitutional rights. *Id.* ¶ 94.

These allegations are sufficient to survive the motion to dismiss. Plaintiff correctly argues that his allegations closely mirror those the First Circuit found sufficiently pled in *Haley v. City of Boston*, 657 F.3d 39, 51-53 (1st Cir. 2011); *see also Echavarria*, 2017 WL 3928270, at *4-5 (finding almost identical pleadings enough to survive a motion to dismiss). In *Haley*, the plaintiff alleged that Boston maintained a policy "under which Boston police officers regularly kept helpful evidence from criminal defendants." *Haley*, 657 F.3d at 52. Although the city "vigorously dispute[d] the accuracy of these allegations", the First Circuit held that "this is neither the time nor the place to resolve the factual disputes between the parties." *Id.* at 52. Thus, "[w]hether Haley can prove what he has alleged is not the issue. At this stage of the proceeding, we must take the complaint's factual allegations as true, and those allegations paint an ugly but plausible picture. If proven, that picture will support a finding of municipal liability." *Id.*

Plaintiff's allegations are much like the plaintiff's in *Haley*. Plaintiff has painted a similarly ugly but plausible picture of Worcester. He is entitled the opportunity to prove his picture is an accurate portrayal.

### 1. Count I

#### a. Issue Preclusion and Collateral Estoppel

Defendants argue that issue preclusion and collateral estoppel bar Plaintiff's Due Process claims because they were or should have been raised during his criminal proceedings. "It is 'well-established' that the doctrine of issue preclusion applies to civil rights claims brought under § 1983." *Echavarria*, 2017 WL 3928270, at *9 (quoting *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005). "Federal courts must give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgments emerged." *Johnson*, 424 F.3d at 93 (citations omitted). In Massachusetts, the "doctrine of issue preclusion provides that when an issue

has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim." *Jarosz v. Palmer*, 766 N.E.2d 482, 487-88 (Mass. 2002) (quotation marks and citation omitted).

Defendants contend that the Superior Court and Appeals Court already addressed Plaintiff's Due Process claims. Indeed, in *Commonwealth v. Cosenza*, the Superior Court found that the evidence did "not establish that the original selection made from the first photographic array was in any way improperly conducted or that the first array's composition of photographs was unduly suggestive." (Docket No. 40-3, at 4). The Appeals Court thereafter upheld Plaintiff's conviction. *See Commonwealth v. Cosenza*, 65 Mass. App. Ct. 1127 (2006). Further, his appeal to the Supreme Judicial Court was denied, *Commonwealth v. Cosenza*, 447 Mass. 1102, 848 N.E.2d 1211 (2006), and he was denied habeas relief. *Cosenza v. Marshall*, 568 F. Supp. 2d 78 (2007).

Defendants rely primarily on *Echavarria* and *Davis v. Schifone*, 185 F. Supp. 2d 95, 101 (D. Mass. 2002). In *Echavarria*, the defendant's conviction was vacated, and he subsequently brought a Section 1983 claim for, *inter alia*, Due Process violations resulting from unduly suggestive identification procedures. The court noted that

> the SJC recognized the constitutional implications of Plaintiff's challenge to the identification procedure, and nevertheless ruled against him on this issue. Thus, the elements of issue preclusion are satisfied: the issue was litigated and determined by a final judgment, and the determination was essential to that judgment. Accordingly, Plaintiff is precluded form advancing any claim that [the defendant's] pretrial identification was unduly suggestive.

2017 WL 3928270, at *9. In *Davis*, the court found that a civil rights plaintiff had a "full and fair opportunity" to raise the issue of probable cause at his criminal trial and he was therefore precluded from relitigating the issue in his civil proceeding. 185 F. Supp. 2d at 101.

In this case, like in *Echavarria*, Plaintiff's conviction was vacated. Here, however, unlike in *Echavarria*, the court that granted Plaintiff a new trial subsequently granted his motion to suppress by finding that "the identification procedure here was impermissively suggestive and therefore warrants suppression of the identification evidence." (Docket No. 40-9, at 12). Thus, under the "later-in-time" rule, if any court's findings are preclusive, it is the Superior Court's finding that the identification procedures *were* unduly suggestive. *See, e.g.*, *Massachusetts v. Wampanoag Tribe*, 98 F. Supp. 3d 55, 67 (D. Mass 2015) ("Under the later-in time rule of the Restatement (Second) of Judgments, the . . . judgment issued five years after . . . would control if it were inconsistent."); Restatement (Second) of Judgments § 15 (1982) ("[I]t is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata.").

Moreover, while the *Echavarria* court found that the plaintiff was precluded despite the vacation of his conviction, other courts in the Commonwealth have questioned the preclusive effect of vacated holdings. *See, e.g.*, *Lingis v. Waisbren*, 2011 WL 6379283, at *2 (Mass Super. Oct. 5, 2011) ("The arguments of res judicata, claims preclusion, and collateral estoppel are not persuasive . . . Here, of course, the final judgment plaintiff achieved was vacated and the case dismissed. No final judgment has entered for the defendant."); *see also No-East-West Highway Committee, Inc. v. Chandler*, 767 F.2d 21, 24 (1st Cir. 1985) ("A vacated judgment has no preclusive force either as a matter of collateral or direct estoppel or as a matter of the law of the case."); Restatement (Second) of Judgments § 13 cmt. f (1982) ("[J]udgment ceases to be final if it is in fact set aside by the trial court, as it would be upon the granting of a motion for a new

trial.").[2]  Further, for the same reasons Defendants' reliance on *Davis* is misplaced.  In that case, the underlying criminal conviction was never vacated. 185 F. Supp. 2d at 101.  Thus, while preclusion was proper in that case, it does not follow that preclusion is proper here.

Defendants next contend that Plaintiff is estopped from raising his Due Process claims for destruction of the chair leg, fingerprints on the window sill, or that officers fabricated the description and identification of the perpetrator.  According to Defendants, Plaintiff had a "full and fair opportunity" to raise these issues pre- and post-trial in his criminal proceedings and his failure to do so precludes him from asserting them in this litigation.

Defendants are correct that Plaintiff never raised these issues in his criminal proceeding. That does not, however, preclude him from doing so now.  In *Fernandes v. Trias Monge*, the First Circuit noted that estoppel only applies to claims "[a]ctually litigated and decided at the state criminal trial." 586 F.2d 848, 854 (1st Cir. 1978) (citation omitted).  The court reasoned:

> [T]o bar all claims that [m]ight have been raised in a criminal trial forces the criminal defendant to the uncomfortable choice between, on the one hand, possibly alienating the trial judge, particularly when the trial judge's own procedures are questioned, and delaying trial, and on the other, foregoing his constitutional claim.

---

[2] Further, several circuit courts have held that the underlying criminal litigation has no preclusive effect post-exoneration in subsequent Section 1983 litigation for wrongful conviction.  *See Evans v. Katalinic*, 445 F.3d 953, 955-56 (7th Cir. 2006) ("This is an absurd argument . . . not only were both convictions . . . vacated . . . leaving precious little upon which preclusion could be based."); *Aguillard v. McGowen*, 207 F.3d 226, 229 (5th Cir. 2000) (holding that a murder conviction that was overturned on appeal on procedural grounds was not a "final judgement" for purposes of collateral estoppel in subsequent litigation, even though the court "specifically found that the evidence supported the verdict."); *Dodrill v. Ludt*, 764 F.2d 442, 444 (6th Cir. 1985) ("[T]he general rule is that a judgment which is vacated, *for whatever reason*, is deprived of its conclusive effect as collateral estoppel.") (emphasis added); *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992) ("A judgment vacated or set aside has no preclusive effect."); *Tillman v. Orange*, 519 F. App'x 632, 638 (11th Cir. 2013) (holding that where the plaintiff's conviction was vacated based on a subsequent state supreme court holding that "[a]ny 'issues' determined in [the plaintiff's] trial are thereby denied preclusive effect.  Thus, we hold that the district court clearly erred in determining that [the plaintiff] could not establish the malice element due to the supposed preclusive effect of a sentence and conviction set aside by the state trial court.").

*Id.* at 855. This "narrower preclusion rule is *particularly warranted* when physical liberty is at stake . . . [therefore] when the sec. 1983 action involves physical restraint, as here, justice counsels against an expansive application of res judicata." *Id.* Therefore, Plaintiff is also not estopped from raising these Due Process claims.

### b. Qualified Immunity

Defendants next argue that even if Plaintiff is not precluded from arguing his Section 1983 claims, Defendants are nonetheless protected by qualified immunity. "Government officials performing discretionary functions generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The First Circuit has adopted a two-part test to assess qualified immunity. Thus, a court must consider: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citation omitted).

The second prong of the test is itself has two aspects. "One aspect of the analysis focuses on the clarity of the law at the time of the alleged civil rights violation." *Id.* Thus, in order "[t]o overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (citation omitted). The second aspect "focuses more concretely on the facts of the particular case." *Id.* Thus, a court must assess "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* Importantly, "this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (quotation marks

and citation omitted). In short, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id.*

When assessing qualified immunity at the motion to dismiss stage, this Court is required to "evaluate the sufficiency of the plaintiffs' pleadings. Indeed, because 'whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded,' we must scrutinize the plaintiffs' complaint to determine whether it states a plausible entitlement to relief." *Id.* at 268 (internal citation omitted). At this stage, however, the Supreme Court has noted that "the precise factual basis for the plaintiff's claim or claims may be hard to identify." *Pearson v. Callahan*, 555 U.S. 223, 238-39, 129 S.Ct. 808 (2009). Thus, the First Circuit has instructed that "where the answer to the first prong of the immunity question may depend on the further development of the facts, it may be wise to avoid the first step." *Maldonado*, 568 F.3d at 270 (citation omitted); *see also Giragosian v. Bettencourt*, 614 F.3d 25, 29 (1st Cir. 2010) ("It is not always possible to determine before any discovery has occurred whether a defendant is entitled to qualified immunity, and courts often evaluate qualified immunity at the summary judgment stage.").

Accordingly, I will begin my assessment of the qualified immunity question with the second prong of the analysis. The Supreme Court has explicitly held that unduly suggestive identification proceedings resulting in an unreliable identification of the criminal defendant violate due process. *See, e.g.*, *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375 (1972) ("It is the likelihood of misidentification which violates a defendant's right to due process . . . Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification

is gratuitous.").  But even where officers utilize unnecessarily suggestive identification procedures, a pre-trial identification does not violate a defendant's due process rights unless, "under all the circumstances of [the] case there is a 'very substantial likelihood of irreparable misidentification.'" *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243 (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967 (1968)).  Thus, officers must evaluate the totality of the circumstances and reach a reasonable conclusion as to whether an identification procedure is improperly suggestive or not. *See Neil*, 409 U.S. at 199-200, 93 S.Ct. 375.

Several courts have found police not entitled to immunity after utilizing suggestive procedures that precure false identifications. *See, e.g.*, *Gregory v. Louisville*, 444 F.3d 725, 747 (6th Cir. 2006) ("Accordingly we find that the district court correctly denied [the defendant] qualified immunity for plaintiff's claim of suggestive identification [in 1992]."); *Sanders v. City of Chicago Heights*, 2016 WL 2866097, at *10 (N.D. Ill. May 17, 2016) ("Indeed, it has been clearly established since at least 1977 that a criminal defendant has a due process right not to be subjected to unduly suggestive identifications that taint his criminal trial."); *Rojas v. Iannatto*, 2003 WL 169798, at *4 (S.D.N.Y. Jan. 24, 2003) ("*Mason*, which . . . defines a criminal defendant's right not to be subjected to unduly suggestive identifications, has been the law since 1977.").  Thus, I find that the first aspect of the second prong is met—it was clearly established at the time Plaintiff's investigation took place that he was constitutionally protected against unduly suggestive identification procedures.

Plaintiff argues because it was clearly established that unnecessarily suggestive identification procedures were unconstitutional at the time of Plaintiff's case, our job is done for the purposes of this motion.  "This formulation of the inquiry, however, is not sufficiently specific. An affirmative answer to [whether Plaintiff was protected against unduly suggestive identification

procedures], though accurate, would state an abstract principle of law, disassociated from the facts of the case." *Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 46 (1st Cir. 2015). Indeed, the second aspect of the prong requires this Court to inquire whether a reasonable defendant would have understood whether his particular conduct violated Plaintiff's rights. In other words, would a reasonable officer had known the identification procedures allegedly utilized were unduly suggestive. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 563 U.S. 563, 742, 131 S.Ct. 2074 (2011). Thus, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* (emphasis added). "The inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Marrero-Mendez*, 830 F.3d at 45.

Under this second aspect, I again find that Plaintiff's right was clearly established. Defendants argue that their identification procedures were only found unnecessarily suggestive by the Superior Court based on new state procedures promulgated after Plaintiff's conviction and not clearly established constitutional precedent. It follows, according to Defendants that there was no clearly established law to put Defendants on notice that their conduct was unlawful. Further, Plaintiff has not cited, nor has this court identified, any case that would deem the identification procedures utilized in Plaintiff's case unnecessarily suggestive under federal law. *Cf. Rojas*, 2003 WL 169798, at *4 ("Moreover, courts have previously held that identification procedures are unduly suggestive *on facts similar to those here*.") (emphasis added). However, Plaintiff alleges in his Amended Complaint that "during the identification procedure, when conferring with M.H. about Plaintiff's photograph, Defendants Hazelhurst and Doherty told M.H. Plaintiff's name, and they told her that he lived in her complex." (Docket No. 4, ¶ 41). In addition, "Defendants Hazelhurst and Doherty *suggested to M.H. that she should identify Plaintiff as her attacker* during

the identification procedure." *Id.* ¶ 42 (emphasis added). While the Court is unaware of any caselaw explicitly holding this type of procedure is unnecessarily suggestive, the First Circuit has held that when an officer's conduct is so clearly unconstitutional, no precedent directly on point is necessary to provide adequate notice to a reasonable officer. *See Marrero-Mendez*, 830 F.3d at 47 ("Indeed, the coerciveness of appellants' conduct is so patently evident that no particular case—and certainly not one 'directly on point,'—need have existed to put a reasonable officer on notice of its unconstitutionality." (quoting *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074)). I find that the coerciveness of Defendants' suggestion that M.H. identify Plaintiff so patently evident that a reasonable officer should have been on notice that it was unlawful.

Thus, it was clearly established that the unnecessarily suggestive identification procedures were unconstitutional at the time of Plaintiff's conviction. Further, it is patently obvious that a reasonable officer would have understood that the practices utilized by Defendants fell within the scope of this proscribed conduct. Therefore, Defendants are not shielded from liability by qualified immunity.[3]

### 2. Count II: Malicious Prosecution

#### a. Plausibility

Defendants first argue that Plaintiff has not properly pled a claim for malicious prosecution. In order to state a claim for malicious prosecution a Plaintiff must demonstrate "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause,

---

[3] While courts often avoid the first prong of the qualified immunity test at this stage in the litigation, the necessity to define the clearly established right with particularity has blurred the distinction in this case between the first prong and the second aspect of the second prong of the qualified immunity analysis. Thus, it is worth noting that at this stage in the litigation, Plaintiff has demonstrated that the facts alleged plausibly make out a violation of a constitutional right.

and (3) criminal proceedings terminated in plaintiff's favor." *Almeida v. Rose*, 55 F. Supp. 3d 200, 204 (D. Mass. 2014) (quoting *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 99-101 (1st Cir. 2013)).

Defendants argue that Plaintiff cannot satisfy the second requirement, that his seizure was unsupported by probably cause. Defendants note that when Plaintiff's conviction was affirmed by the Massachusetts Appeals Courts, the court noted the corroborating evidence of Plaintiff's guilt. Thus, even if the identification procedures were unnecessarily suggestive, the other evidence sufficiently supported Plaintiff's arrest and prosecution. As noted above, however, this Court is confined to Plaintiff's Amended Complaint for the factual foundation of his claims at this stage of the litigation. *See, e.g.*, *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—*not for the truth of the facts recited therein*, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (emphasis added)). Further, and also discussed above, as the Appeals Court's holding was vacated it has no preclusive force here.

In Plaintiff's Amended Complaint, he notes that the only other evidence supporting his guilt was the fact that he lived in M.H.'s apartment complex. Therefore, given that it is plausible that Defendants' identification procedures were unnecessarily suggestive, it is also plausible that Plaintiff's prosecution was unsupported by probable cause. He may proceed with his claim.

### b. Qualified Immunity

Defendants similarly argue that they are entitled to qualified immunity from Plaintiff's malicious prosecution claims. In *Hernandez-Cuevas*, the First Circuit "ma[de] explicit what has long been implicit in our case law" and held that the Fourth Amendment protects the right to be free from malicious prosecution. 723 F.3d at 98-99. Before *Hernandez-Cuevas*, the First Circuit

had described it as an "'open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation,'" and consequently held that "[s]uch uncertainty in the legal landscape entitles state actors to qualified immunity." *Rodriguez-Mateo v. Guentes-Agostini*, 66 Fed.Appx. 212, 214 (1st Cir. 2003) (quoting *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001)); *see also Eschavarria*, 2017 WL 3928270, at *8 ("Since the Fourth Amendment right to be free from malicious prosecution was not clearly established until 2013, the individual defendants are entitled to qualified immunity from Plaintiff's section 1983 claim that Defendants engaged in malicious prosecution of him in violation of his constitutional rights in or before 1996.").

Defendants argue that the caselaw demonstrates Plaintiff's right was not clearly established and they are therefore entitled to qualified immunity. However, the courts in *Rodriguez-Mateo* and *Eschavarria* focused their attention on whether the cause of action and not the underlying right was clearly established. I respectfully disagree with the reasoning of those courts as the relevant inquiry is whether the *underlying right* was clearly established at the time of Plaintiff's malicious prosecution. As the court in *Davis v. Murphy* recognized, "there is a difference between articulating a precise cause of action that a plaintiff may bring and establishing that certain conduct violates the Constitution." 2018 WL 1524532, at *9 (D. Mass. Mar. 28, 2018); *see also King v. Harwood*, 852 F.3d 568, 580 n.4 (6th Cir. 2017) (distinguishing "recognition of § 1983 *claims* from . . . articulation of whether a given right is *clearly established*" (emphasis in original)); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) ("[W]hen the question is whether to grant immunity to a public employee, the focus is on his conduct, not on whether that conduct gave rise to a tort in a particular case.").

Accordingly, I must assess whether Plaintiff's right to be free from malicious prosecution was clearly established in 2000.  I find that it was.  Indeed, "it has long been established that a police officer violates the Constitution by intentionally or recklessly making false statements . . . or omitting true exculpatory" evidence to support a prosecution. *Davis*, 2018 WL 1524532, at *9. The First Circuit has similarly held that it is "self-evident" that "those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit." *Hernandez-Cuevas*, 723 F.3d at 97 n.7.  Thus, no reasonable officer "would have been ignorant of the fact that fabricating evidence was constitutionally unacceptable." *Id.* (citation omitted); *see also Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ("In the circumstances of this case, that question requires us to determine whether the right not to be framed by law enforcement agents was clearly established in 1967 . . . We think that it was.").  Consequently, the court in *Davis* rejected the defendant's arguments for qualified immunity based on a claim for malicious prosecution because he could "not show[] that, as a matter of law, his conduct did not violate a clearly established right." *Davis*, 2018 WL 1524532, at *9.  Therefore, I find that the right to be free from malicious prosecution was a clearly established right before Plaintiff was prosecuted.

The first prong of the qualified immunity analysis is also satisfied based on the pleading analysis above.  Because it is plausible that Defendants' identification procedures were unnecessarily suggestive, it is also plausible that Plaintiff was prosecuted without the requisite probable cause.  It follows that Plaintiff has plausibly alleged that Defendants violated his clearly established constitutional right.

### 3.  Count III: Conspiracy

Defendant argues that Plaintiff's conspiracy claim fails due to a deficiency of factual support for his claim. "A civil rights conspiracy . . . is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principle element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Estate of Bennet v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (quotation marks and citation omitted). In the context of a Section 1983 claim, for a conspiracy to be actionable, "a plaintiff has to prove not only a conspiratorial agreement but also an actual abridgement of some federally-secured right." *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). A conspiracy may be a "matter of inference." *Estate of Bennett*, 548 F.3d at 178; *see also Early v. Benoit*, 850 F.2d 836, 843 (1st Cir. 1988) ("[T]he agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances."). However, "a claim of conspiracy to deprive a plaintiff of civil rights will not survive a motion to dismiss if it makes conclusory allegations without making supporting factual assertions." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).

In *Williams v. City of Boston*, the court found a conspiracy claim plausible when the plaintiff because:

> Williams has alleged facts indicating that the defendant police officers responded to the 911 calls together, were jointly involved in the investigation, intentionally pursued false criminal charges and fabricated evidence against him relating to the alleged assault and stabbing of a woman . . . Thus, the essence of Williams' claims against Boyle and Kelley in this action is that they acted in concert in order to frame him for a crime which he did not commit. Under such circumstances, it is reasonable to infer that the defendants were acting pursuant to an agreement.

771 F. Supp. 2d (D. Mass. 2011); *see also Santiago v. Fenton*, 891 F.2d 373, 389 (1st Cir. 1989) (reversing directed verdict on conspiracy claim where reasonable jury could have found that

officers fabricated reason for arresting the plaintiff, and that consequently, a conspiracy existed to unlawfully arrest the plaintiff); *Echavarria*, 2017 WL 3928270, at *4 n.4 ("Furthermore, Plaintiff's conspiracy claim may proceed because Plaintiff alleges that Defendants acted individually, jointly, and in conspiracy with one another and that they acted in concert with other co-conspirators to deprive Plaintiff of his constitutional rights . . . these factual allegations are adequate to state a claim for relief.").

The same is true here. Plaintiff alleges that "as soon as Defendants learned Cosenza lived in the apartment complex, they decided that Cosenza was their suspect, they stopped looking for M.H.'s assailant, and they focused their investigation entirely on developing evidence to implicate Plaintiff in the crime." (Docket No. 4, ¶ 34). As a result, Plaintiff contends that Defendants destroyed and withheld exculpatory evidence, induced a false identification by utilizing unduly suggestive identification procedures, and conspired with one another to deprive Plaintiff of his constitutional rights. Plaintiff will eventually have to demonstrate that a conspiracy existed by a preponderance of the evidence to prevail, but for now he must only show that a conspiracy is plausible, and it is.

### 4. Count IV: Failure to Intervene

Defendants' again argue that they are entitled to qualified immunity. According to Defendants, a claim for failure to intervene has been clearly established in the context of an excessive use of force but not for failure to intervene in a different due process violation.

Defendants are correct that "First Circuit cases have primarily, if not exclusively, concerned allegations of failure to intervene in the excessive force context." *Echavarria*, 2017 WL 3928270, at *10. *See, e.g.*, *Wilson v. Town of Mendon*, 294 F.3d 1, 6 (1st Cir. 2002) ("An officer may be held liable not only for his personal use of excessive force, but also for his failure to

intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers."); *Davis v. Rennie*, 264 F.3d 86, 98 (1st Cir. 2001) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance" (citation omitted)). On the other hand, the First Circuit has not "explicitly limite[ed] failure-to-intervene claims to excessive force cases" and "occasionally described actionable failure to intervene claims in terms that could encompass a broad range of constitutional rights." *Echavarria*, 2017 WL 3928270, at *10. *See, e.g., Torres-Rivera v. O'Neil-Cancel*, 406 F.3d 43, 54 (1st Cir. 2005) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." (emphasis omitted) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988))); *Clark v. Taylor*, 710 F.2d 4, 9 (1st Cir. 1983) ("Liability under section 1983 may be imposed both for action that deprives a plaintiff of a constitutional right and for failure to act, when there is a duty to act, to prevent such a deprivation."); *see also Walker v. Jackson*, 952 F. Supp. 2d 343, 352 (D. Mass. 2013) (finding it "unclear whether liability may be imposed for failing to intervene in an unreasonable search.").[4]

---

[4] Further, several circuit courts have described failure to intervene claims in broad language that seems to go beyond excessive force cases. *See, e.g., Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002) ("[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) ("An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." (emphasis in original)); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officials in their presence."); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982) ("[A] law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed

Plaintiff again contends that Defendants' reasoning circumvents the relevant inquiry. In Plaintiff's view, a failure to intervene claim is merely a pathway to liability. According to Plaintiff, the relevant inquiry is whether the underlying right was clearly established. As discussed above, Plaintiffs underlying constitutional rights that were allegedly violated were indeed clearly established at the time of his prosecution. The First Circuit, however, seems to have suggested that the duty to intervene in the context at issue must have also been clearly established. In *Torres-Rivera*, for instance, the First Circuit held that an officer was not entitled to qualified immunity in the excessive force context that "the law was clearly established in 1998 that an officer *in O'Neill's circumstances* had a duty to intervene." 406 F.3d at 55 (emphasis added). This language implies that not only must the underlying right be clearly established but also the duty for an officer to intervene in the relevant circumstances. *See Echavarria*, 2017 WL 3928270, at *11 ("Thus, it appears that the duty to intervene itself must be clearly established."). Therefore, like the court in *Echavarria*, I find that Defendants are entitled to qualified immunity for their failure to intervene claim in a constitutional violation because that violation was not the excessive use of force. *See Echavarria*, 2017 WL 3928270, at *10-11 (holding that the defendants were entitled to qualified immunity on a failure to intervene claim not premised on excessive force).[5]

### 5. MTCA Immunity

---

duty to enforce the laws equally and fairly, and thereby denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law." (citation omitted)).

[5] It may seem inconsistent that the Court finds qualified immunity unavailable to Defendants for Plaintiff's malicious prosecution claim but available here. In both circumstances, Plaintiff rightly argued that an underlying, and clearly established constitutional right was violated. For Plaintiff's malicious prosecution claim, however, what was missing was merely the cause of action. Thus, a reasonable officer would have known that his conduct violated Plaintiff's rights. In the context of the failure to intervene, however, not only was a pathway to liability potentially absent but also a clearly established duty to intervene. Therefore, it would not be sufficiently clear to a reasonable officer that his omission in failing to intervene would constitute a violation of Plaintiff's clearly established underlying right.

Defendants finally argue that they are entitled to immunity under the Massachusetts Tort Claims Act ("MTCA"). Courts have recognized, however, that "chapter 258 [of the MTCA] does not displace the town's liability under section 1983." *Doe v. Town of Plymouth*, 825 F. Supp. 1102, 1112 (D. Mass. 1993). Plaintiff brings four claims, all under section 1983. As such, his claims are not precluded by the MTCA.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss (Docket No. 39) is ***granted*** with respect to Count IV as Defendants are entitled to qualified immunity. Otherwise, Defendants' motion is ***denied***.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**