## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **NATALE COSENZA,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| **Plaintiff,** | ) | **NO. 4:18-10936-TSH** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF WORCESTER, Massachusetts,** | ) | |
| **KERRY HAZELHURST, JOHN** | ) | |
| **DOHERTY, T.J. COAKLEY, MARK** | ) | |
| **RICHARDSON, ALLAN BURNES,** | ) | |
| **DANIEL BENEDICT, BRIAN DONOHUE,** | ) | |
| **ROBERT TRUGEON, DAVID GRADY,** | ) | |
| **DARLENE ROCHEFORD, and AS-YET** | ) | |
| **UNKNOWN WORCESTER POLICE** | ) | |
| **OFFICERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER AND MEMORANDUM ON DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (Docket No. 254)

### 1/9/2023

**HILLMAN, D.J.**

Natale Cosenza ("Cosenza" or "plaintiff") brought a § 1983 action alleging constitutional claims against various defendants stemming from his conviction and sixteen-year incarceration for armed burglary. At trial, the defendants were Kerry Hazelhurst ("Hazelhurst") and John Doherty ("Doherty") (collectively "defendants"), and four claims were presented to the jury regarding suppression or fabrication of evidence. The jury found Hazelhurst fabricated and suppressed evidence in Cosenza's criminal trial and that Hazelhurst and Doherty conspired to violate Cosenza's civil rights and awarded compensatory and punitive damages. For the reasons below, the defendants' renewed motion for judgment as a matter of law is ***denied***.

**Background**

Around 4 A.M. on August 14, 2000, Melissa Horgan ("Horgan") was awoken in her bedroom by an intruder. After she asked him who he was, he beat her with a hard object and attempted to climb onto her bed, but Horgan kicked the man repeatedly and he fled. Immediately after the attack, Horgan identified the attacker as a white man in his underwear, a t-shirt, with a white piece of clothing on his head, and that she had never seen him before.

The officer who responded interviewed Horgan's neighbors in her condominium building. One neighbor, Robert Payton ("Payton"), told the officer he was having problems with Cosenza, and that Cosenza had previously entered the building by climbing onto a shared balcony and had knocked on several doors asking for money. Cosenza lived in a nearby building in the same complex but did not have access to Horgan and Payton's building. The officer created a report listing Cosenza as a suspect. On August 15, 2000, Hazelhurst, a detective, was assigned to the case, reviewed the officer's report, and set up a photo array with Horgan. The array used Cosenza's picture and pictures of eight men with physical characteristics similar to Cosenza. At the photo array, Horgan identified Cosenza as her attacker. In a witness statement made that day, after the photo array, Horgan identified her attacker as Cosenza. The statement also mentioned that the attacker had medium-to-short dark hair, the incidents between Cosenza and Payton, and identified Cosenza as someone who had knocked on her door. Specifically, prior to the attack, Cosenza had knocked on Horgan's door while she was not home and Horgan's roommate told her about the incident, though at the time neither knew who had knocked nor who Cosenza was.

Horgan did not remain at her apartment after the attack. On August 15, 2000, Horgan's sister and mother picked up clothes from her bedroom. On August 16, Horgan returned to her

apartment with Hazelhurst and other detectives and picked up more clothes from her bedroom. During August, two of Horgan's nephews stayed at the apartment along with other male guests. There is some debate about when Horgan returned again to pick up additional clothes, but the parties agree that she did. On September 13, 2000, Horgan was emptying a bag of clothes that had been retrieved from her apartment and found a pair of shorts. Not recognizing them, she checked with her family but none of them recognized the shorts. She called Hazelhurst, who collected the shorts and sent them to the state lab to be tested. The shorts had semen stains that did not match Cosenza. Hazelhurst wrote an incident report about the shorts on September 17, 2001, after the DNA test came back negative, and told the prosecutor before Cosenza's criminal trial that he had searched the apartment for men's clothing on August 16, 2000.

Cosenza was charged was intent to rape, assault and battery with a dangerous weapon, and burglary, and was indicted on October 13, 2000. Cosenza moved to suppress the photo array as unduly suggestive, which was denied. At the suppression hearing Hazelhurst admitted that it was likely he told Horgan Cosenza's name after she identified him and that he lived in her building. At trial, the Commonwealth relied heavily on Horgan's identification and Hazelhurst testified he doubted he bolstered her identification with negative information about Cosenza. Cosenza maintained his innocence, pointing to the shorts and the unreliability of Horgan's identification. The Commonwealth argued that the shorts were left by one of the male guests who stayed in August. In addition, Hazelhurst testified that he searched the apartment for men's shorts or pants on August 16, 2000, to no avail. Cosenza was convicted of armed burglary.

Cosenza moved for a new trial, arguing that it was ineffective for his counsel to not contact all the guests who stayed at Horgan's apartment, which was denied. In 2015, Cosenza moved for a new trial, arguing that expert testimony is necessary to aid a jury in understanding

the reliability of eyewitness identifications. That motion was granted. Prior to the new trial,

Cosenza moved to suppress the identification, arguing the photo array was unduly suggestive,

which was granted. The Commonwealth filed a *nolle prosequi* and the case was closed.

Subsequently, Cosenza filed the instant case in this court.

<u>Analysis</u>

*1. Motion for Judgment Notwithstanding the Verdict*

"[C]ourts may only grant a judgment contravening a jury's determination when the

evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable

jury could have returned a verdict adverse to that party." *Jones ex rel. U.S. v. Mass. Gen. Hosp.*,

780 F.3d 479, 487 (1st Cir. 2015) (citation omitted). In reviewing the record during a motion for

a directed verdict under 50(b), the court must draw "all reasonable inferences in favor of the

verdict" and "refrain from passing judgment upon the credibility of witnesses, resolving

evidentiary conflicts, or evaluating the weight of the evidence." *Full Spectrum Software, Inc. v.

Forte Automation Sys., Inc.*, 858 F.3d 666, 673, 671 (1st Cir. 2017). If "the record supports

conflicting versions of the truth, it [becomes] the jury's function—not the court's—to choose

between these versions." *Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 29 (1st Cir. 2012).

*a. Suppression*

"[L]aw enforcement officers have a . . . duty to turn over to the prosecutor any material

evidence that is favorable to the defendant. *Drumgold v. Callahan*, 707 F.3d 28, 38 (1st Cir.

2013). Although this Court instructed the jury on *Drumgold*-style claims, Defendants do not

challenge the jury instructions, only whether what the defendants term a "deliberate deception"-

style claim is supported by the evidence (they incorrectly argue *Drumgold*-style claims do not

exist). Although the duty in *Drumgold* is relatively recent, it has been clear since *at least* the

4

1940s that officers cannot deliberately conceal exculpatory evidence. *Pyle v. Kansas*, 317 U.S. 213, 216 (1942); *see also Mooney v. Holohan*, 294 U.S. 103, 112, (1935) (the state may not obtain conviction by "deliberate deception"); *Haley v. City of Boston*, 657 F.3d 39, 50 (1st Cir. 2011) (same). To succeed on a *Drumgold*-style claim, a plaintiff must show (1) suppression of exculpatory evidence and (2) that the exculpatory evidence was material and that it caused his conviction.[1] To succeed on what this Court will refer to as a *Pyle*-style claim, the plaintiff must additionally show deliberate deception. Deliberate deception exists if the defendant officer (1) knows the information is exculpatory (2) knows the defense requested exculpatory information and (3) fails to disclose the information to the prosecutor. *Haley*, 657 F.3d at 50-51.

At trial the plaintiff argued that the additional details in the post-array witness statement, along with Horgan's professed lack of knowledge as to who Cosenza or the person knocking on doors was, demonstrated that Hazelhurst provided Horgan with that information after her identification, thus bolstering the identification by imputing to Cosenza a criminal or at least unsavory nature. Furthermore, Hazelhurst admitted that the information about Payton's interactions with Cosenza was in the report he reviewed prior to conducting the photo array. Finally, that discrepancy was suppressed because at the criminal trial Hazelhurst testified that he "doubted" that he bolstered Horgan's testimony.

The jury was reasonable in inferring that Hazelhurst bolstered Horgan's identification by giving her negative information about Cosenza. Having found the bolstering occurred, it was necessarily suppressed because Hazelhurst never notified the prosecutor. The jury might have

---

[1] Technically, materiality and causality are separate prongs, but the "factual causation inquiry essentially replicates the materiality inquiry with a heightened burden of proof." *Drumgold*, 707 F3d at 49. While the First Circuit has held that juries must consider these questions separately, this Court considers them in a single analysis for the purpose of this motion. Whenever this Court rules that a reasonable jury could find the "causal" requirement satisfied, it necessarily follows a jury could find "materiality" satisfied.

reasonably found that such evidence impeached Horgan and was therefore exculpatory, the theory the Court assumed at summary judgment. *Wearry v. Cain*, 577 U.S. 385, 392-93 (2016). At trial, plaintiff focused on another theory, that Horgan underwent "unconscious transference." Plaintiff theorized that the circumstances of the initial identification were not conducive to a reliable identification. Therefore, it was the bolstering of the identification that helped cement Cosenza as the attacker in Horgan's mind, leading to the confidence in her identification, a confidence that continued to this civil trial. That theory was supported by an unrebutted expert witness. The jury could have reasonably credited that theory and found Horgan would not have maintained her identification, or at least not to the extent she did, had the bolstering been revealed. Regardless of the theory, the value of the inculpatory evidence the Commonwealth had at the criminal trial would have decreased, and the civil jury was reasonable in finding that the criminal jury would not have found, beyond a reasonable doubt, that Cosenza was guilty, satisfying the causal requirement. Thus, a *Drumgold*-style claim was supported by the evidence.

As to deliberate deception, when asked at the criminal trial whether he fed Horgan negative information about Cosenza, Hazelhurst testified "I doubt it. I don't think so." He also testified he understood bolstering was improper and that he conducted all his photo arrays the same. Because the jury found Hazelhurst bolstered the identification, his denial at the criminal trial meets the *Haley* standard for deliberate deception. A jury could infer Hazelhurst knew he bolstered, knew the bolstering was exculpatory and important to the case, and deceived the court—that it was not a memory lapse. Thus, a *Pyle*-style claim was supported by the evidence.

*b.  Fabrication*

6

Officers may not fabricate evidence to obtain a conviction. *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004). [2] The standard is nearly identical to the *Pyle*-style suppression standard: (1) fabrication of inculpatory evidence that is (2) material / causal to the conviction and (3) deliberate deception. [3]

The plaintiff argued at trial that Hazelhurst's testimony that he searched Horgan's apartment on August 16, 2000 was fabricated to diminish the exculpatory value of the shorts. Plaintiff introduced evidence that the shorts were not left after the attack, including testimony from the male guests that the shorts were not theirs, that no officers searched the room for shorts before Hazelhurst's alleged search, and that the room was in the same state it was during the attack when Horgan returned to collect clothes. Furthermore, the plaintiff introduced evidence that the shorts were not there before the attack, including Horgan's testimony that she did not have male overnight guests and that her male family members did not recognize the shorts. Contrary to defendants' argument that no new evidence was introduced after summary judgment, the inconsistencies between Hazelhurst's criminal and civil trial testimony were not available to the Court at summary judgment. *Jones*, 780 F.3d at 488 ("the record fully develops between any proffered summary judgment motion and trial"). [4]

---

[2] Contrary to the defendants, both the suppression and fabrication claims, as violations of the Due Process guarantee to a fair trial, are in the "four corners of the complaint." *Cf. Haley*, 657 F.3d at 49 (rejecting defendant's attempt to limit plaintiff to a *Brady*-style Due Process claim when a claim based on deliberate deception was plainly viable); *accord Drumgold*, 707 F.3d at 43-44.

[3] Although unlikely, it is conceivable that an officer could unintentionally fabricate inculpatory evidence. So long as it is intentional, fabrication necessarily meets the deliberate deception standard.

[4] Unlike the suppression issue, the fabrication theory was not briefed by defendants at the summary judgment stage. This Court ruled that, under a suppression theory, a lack of contemporary documentation was not enough raise a genuine issue of material fact as to the honesty of Hazelhurst's testimony about the August 16, 2000, search. However, the defendants did not adequately dispute the issue framed as one of fabrication, so the Court allowed it to proceed to trial.

At the criminal trial Hazelhurst testified that when he was in the bedroom on August 16, 2000, he was looking to see if anything was out of place, "*especially a pair of men's shorts or pants*" and that he "did not see those gym shorts." (emphasis added). At the civil trial, he testified he did a "cursory" search, that he was just "looking around," and that he relied on an earlier Bureau of Criminal Identification ("BCI") search to identify anything noteworthy. But the BCI investigator who processed the scene testified that she did not process that sort of evidence; she took fingerprints and photographs. The jury could have inferred, given his experience, that Hazelhurst knew BCI did not collect shorts or pants. In addition, Hazelhurst did not document the search contemporaneously and Doherty testified that Hazelhurst was "concerned" when the DNA test came back negative. The jury was reasonable in finding that Hazelhurst fabricated his testimony about searching for the shorts. As it diminished the value of exculpatory evidence, the testimony was inculpatory.

The jury was also reasonable in finding that the fabricated testimony caused Cosenza's incarceration. Had Hazelhurst not testified that he looked for shorts or pants on August 16, 2000, the criminal jury would have considered shorts at the scene of the crime, with a DNA test that did not match Cosenza, testimony from Horgan that her family members did not recognize the shorts, and testimony from her nephew that no one entered her bedroom while she was away. The Commonwealth still could have argued that the shorts belonged to one of the guests, but Hazelhurst's testimony was important enough that the Commonwealth referred to it to discredit the shorts' importance in their closing arguments at the criminal trial. (Docket No. 181, at 8). Indeed, at this trial Hazelhurst testified that, absent his search, the shorts were "about as close to an exoneration as you can get." Finally, the lack of documentation of a search until the DNA test came back negative, along with Doherty's testimony that Hazelhurst was "concerned" by the

negative DNA test is enough—along with the evidence of fabrication—for the jury to find that Hazelhurst intentionally fabricated the search to diminish the exculpatory value of the shorts.

### c.   Qualified Immunity

The defendants argue qualified immunity bars liability for the suppression and fabrication claims. The analysis above relates to the first prong of the qualified immunity analysis, whether there is a constitutional violation. *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019). The second prong concerns whether the law was clearly established at the time of the violation and whether a reasonable defendant would know his conduct violated the plaintiff's rights. *Id.*

It has been clear since at least the 1940s that fabricating or deliberately concealing material evidence is unconstitutional. A reasonable officer in Hazelhurst's position would know that suppressing evidence that he improperly bolstered Horgan's identification and fabricating testimony to diminish the value of exculpatory evidence are constitutional violations. *Haley*, 657 F.3d at 50-51. Even if the jury only found a *Drumgold*-style suppression claim, such a right was firmly established by 1995. *Drumgold*, 707 F.3d at 38; *accord Echavarria v. Roach*, 565 F. Supp. 3d 51, 87 (D. Mass. 2021). Multiple circuits have held the duty was established in the early 1990s, *Moldowan v. City of Warren*, 578 F.3d 351, 381-82 (6th Cir. 2009) (collecting cases), or at least by the mid-1990s; *McMillian v. Johnson*, 88 F.3d 1554, 1567-68 (11th Cir.1996). A reasonable officer would know that not turning over exculpatory, material evidence would be a constitutional violation. Indeed, Hazelhurst testified that bolstering would have been improper; he knew that not turning over that information to a prosecutor would also be improper.

### d.   Conspiracy

Parties cannot raise arguments in their 50(b) motion they did not raise in their 50(a) motions. *Falto De Román v. Mun. Gov't of Mayagüez*, 46 F.4th 51, 55 (1st Cir. 2022). The

arguments must be "distinctly articulated" in the 50(a) motion, not merely relating to the same issue. *Santos-Arrieta v. Hosp. Del Maestro*, 14 F.4th 1, 8 (1st Cir. 2021) (citing *RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 537 (1st Cir. 2016)). The defendants' only argument as to the conspiracy claim in their 50(a) motions was to deny the existence of § 1983 conspiracies. They are confined to that argument now. Their arguments at summary judgment, not included in their 50(a) motion, are waived. *Parker v. Gerrish*, 547 F.3d 1, 12 (1st Cir. 2008). Because § 1983 conspiracies exist, this argument fails as a matter of law.

### e.  Perjury

Defendants argue that in maintaining that he never admitted his guilty Cosenza perjured himself because they impeached Cosenza with notes from a parole board hearing that indicated he admitted his guilt. Cosenza was *impeached*; that is not perjury. Cosenza maintained throughout this trial that he never admitted guilt to anyone and that he does not know why the parole board wrote that he admitted guilt. The jury found him credible, and this court may not second-guess them. This also bars defendants' argument that this is grounds for a new trial.

### 2.  Motion for a New Trial

"A district court's power to grant a motion for new trial is much broader than its power to grant a [Rule 50 motion.]." *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). But when the issue is "at bottom, based on sufficiency of the evidence, the standards under Rule 50 and Rule 59 effectively 'merge.'" *Rodriguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 21 (1st Cir. 2022); *accord Sanchez v. Foley*, 972 F.3d 1, 16-17 (1st Cir. 2020) (conflicting testimony and credibility disputes are typically not grounds for a new trial). As to defendants' arguments that a new trial should be granted because of concerns about the sufficiency of the evidence, "consideration of the same facts that lead us to [deny] under Rule 50 likewise lead

[this Court] to [deny] as to Rule 59." *Rodriguez-Valentin*, 27 F.4th at 21. A court may also grant a motion for a new trial "if the verdict is . . . tantamount to a miscarriage of justice." *Sanchez*, 972 F.3d at 16 (citation omitted). Defendants argue that improperly admitted evidence and improper closing arguments amount to a miscarriage of justice.

### a.  Improper Evidence

The defendants argue that this Court erred in admitting evidence relating to the shorts because the shorts were "previously litigated." The analysis above demonstrates that all the evidence introduced relates to the fabrication analysis. Furthermore, insofar as defendants are arguing that plaintiff's Due Process rights are satisfied because he had a chance to *accuse* Hazelhurst of fabrication at his criminal trial, that is plainly incorrect. The only evidence regarding the shorts that merits further discussion is the testimony of the male guests which was initially given at the ineffective assistance of counsel hearing and admitted at this trial.

At that hearing, several of the male guests present in Horgan's apartment after her attack testified that the shorts were not theirs. Plaintiff's theory at that hearing was that his criminal trial counsel should have called these guests as witnesses. The superior court disagreed, holding that such a decision was a legitimate tactic given the possibility that one of them would admit the shorts were theirs, destroying their exculpatory value. Defendants are correct that the guests' testimony is irrelevant to *materiality* because their testimony was not part of the criminal trial. Therefore, the jury could not consider it in determining whether the jury at that trial would have convicted Cosenza absent Hazelhurst's testimony about the search. But the guests' testimony is relevant to *fabrication*. The guests' testimony tends to show that the shorts were in Horgan's apartment prior to the guests' visit, and therefore in the apartment during Hazelhurst's purported

search. That casts doubt on the credibility of Hazelhurst's testimony. The guests' testimony is therefore relevant and admitting it was not a miscarriage of justice.

Furthermore, the guests' testimony is relevant to innocence and innocence is relevant to damages. An incarcerated innocent person suffers more than a guilty individual who was not afforded a fair trial. *Cf. Limone v. United States*, 497 F. Supp. 2d 143, 227 (D. Mass. 2007) (noting the "horror" of being incarcerated for a crime you did not commit). The extent to which evidence of innocence can be admitted in these sorts of cases is an open question. There is non-binding case law supporting plaintiff's position. *Waters v. Town of Ayer*, 04-cv-10521 (D. Mass. 2009) (Docket No. 136, at 20) (DNA evidence was admissible in a similar case where the wrongful conviction occurred prior to the advent of DNA evidence because although it was irrelevant to the constitutional violation, it was relevant to the question of innocence and therefore damages); *see also Parish v. City of Elkhart*, 702 F.3d 997, 1001-02 (7th Cir. 2012) (similar). Defendants cite no case law supporting their position. This Court carefully instructed the jury on the precise claims they would decide to determine liability. (Docket No. 272-1, at 18-19). Jurors are assumed to follow those instructions. *United States v. Garcia-Pastrana*, 584 F.3d 351, 387-88 (1st Cir. 2009). Admitting this evidence was not a miscarriage of justice.

Similarly, the defendant argues that evidence regarding the suggestiveness of the photo array was impermissibly admitted. Plaintiff was entitled to introduce evidence relating to the array given the unconscious transference theory and to establish Hazelhurst's general approach to arrays. Also, to prove that the bolstering would have made a difference to the outcome of the criminal trial he was entitled to discuss the array more generally. Finally, plaintiff is allowed to argue for his innocence, and the array is relevant to that issue. Admitting this evidence was not a miscarriage of justice.

### b. *Improper Closing Arguments*

Defendants concede that they did not object to the closing arguments. Thus, the "plain error" standard applies, and the moving party must show "(1) an error was committed; (2) the error was "plain" (i.e. obvious and clear under current law); (3) the error was prejudicial (i.e. affected substantial rights); and (4) review is needed to prevent a miscarriage of justice." *Smith v. Kmart Corp.*, 177 F.3d 19, 26 (1st Cir. 1999).

Defendants argue (without pointing to any particular statement) that plaintiff's counsel's closing argument focused too much on the suggestiveness of the photo array. As discussed above, plaintiff's counsel was entitled to discuss aspects of the photo array process other than the bolstering. Defendants also argue that plaintiff's counsel "shifted the burden of proof" by arguing the jury should draw a negative inference from the defendants' lack of an expert witness to rebut the plaintiff's unconscious transference expert witness. The defendants argue they did not use an expert to preserve their objections to that witness on appeal. The defendants are entitled to a tactical decision, not to insulation from its consequences. Defendants argue it was improper for plaintiff's counsel to argue Horgan was mistaken in her identification. That is relevant both to the materiality prong of the suppression claim as well as innocence. Finally, the jury instructions cured any minor prejudice because juries are presumed to follow instructions. *Garcia-Pastrana*, 584 F.3d at 387. This Court, over plaintiff's vigorous objections, granted almost every request the defendants had for jury instructions. Applying those instructions, the jury found defendants liable. This Court will not disturb that judgment.

### **Conclusion**

For the reasons above, the defendants' motion is ***denied***.

**SO ORDERED**

**/s/ <u>Timothy S. Hillman</u>**
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
