UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALE COSENZA,<br><br>             Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER, Massachusetts, KERRY HAZELHURST, JOHN DOHERTY, T.J. COAKLEY, MARK RICHARDSON, ALLAN BURNES, DANIEL BENEDICT, BRIAN DONOHUE, ROBERT TRUGEON, DAVID GRADY, DARLENE ROCHEFORD, and AS-YET UNKNOWN WORCESTER POLICE OFFICERS,<br><br>             Defendants. | CIVIL ACTION<br>NO. 4:18-10936-TSH |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS (Docket No. 295)**

4/7/2023

**HILLMAN, S.D.J.**

      Natale Cosenza ("plaintiff") brought this § 1983 action alleging constitutional claims against various defendants stemming from his conviction and sixteen-year incarceration for armed burglary. A jury found two of those defendants liable for violations of plaintiff's civil rights and awarded $8 million in compensatory damages and $30,000 in punitive damages. The plaintiff moves for attorney's fees and costs. (Docket No. 295). For the reasons below, his motion is ***denied*** in part and ***granted*** in part.

## **Background**

This case was filed in May 2018 against the city of Worcester and several named and unnamed Worcester police officers, alleging four theories of liability: (1) Due Process violations, (2) malicious prosecution, (3) conspiracy, and (4) failure to intervene. (Docket No. 1).[1] Those theories were based on alleged destruction of evidence, allegedly unduly suggestive identification procedures, prejudicial post-array commentary, suppression of evidence relating to the identification of the plaintiff, and fabrication of a search for shorts or pants.

After the defendants filed a motion to dismiss, the failure to intervene theory was dismissed but all other claims survived. (Docket No. 55). At summary judgment, this Court dismissed all claims based on legal theories of malicious prosecution and all claims based on destruction of evidence and unduly suggestive identification procedures. (Docket No. 141). This left two defendants—Kerry Hazelhurst and John Doherty—defending themselves against Due Process claims. Plaintiff alleged that Hazelhurst had suppressed prejudicial post-array commentary to the victim and fabricated his testimony that he searched for shorts or pants to discredit exculpatory evidence and that Doherty had suppressed evidence concerning his supposed identification of the plaintiff on a bicycle near the scene of the crime, and that the two had conspired to commit these violations of plaintiff's civil rights.

After a six-day trial, plaintiff prevailed on all claims except that Doherty had suppressed evidence relating to his identification of the plaintiff. (Docket No. 246). Defendants' post-trial motions to overturn the verdict failed, (Docket No. 274), and this Court entered judgment, (Docket No. 277). Defendants' post-trial motion to stay the judgment or waive the supersedeas bond requirement also failed. (Docket No. 294).

---

[1] The plaintiff amended the complaint twice to add defendants, but not any new claims.

**Standard of Review**

To determine a fee award under § 1988, the Court must calculate the number of hours reasonably worked on the case, then multiply it by a lodestar "benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. *Pérez-Sosa v. Garland*, 22 F.4th 312, 321 (1st Cir. 2022) (citation omitted). That amount can then be adjusted based on several factors, discussed below. *Id.*

**Analysis**

1. *The Lodestar*

   a. *Reasonable Rate*

The appropriate "community" for determining rates is the Worcester area. This undermines plaintiff's citations to Boston rates. The defendants' proposed rates (the rates *their* counsel charge the city of Worcester) show they failed to consider the differences between attorneys contracting with the government and attorneys contracting with private litigants. Furthermore, their proposed rates are half what this Court held was reasonable for civil rights attorneys in Worcester five years ago. *Thayer v. City of Worcester*, No. 13-cv-40057-TSH, 2017 WL 1190366, at *3 (D. Mass. Mar. 29, 2017). Using the rates in *Thayer* as a benchmark, taking into account inflation as well as the experience and specialization of the plaintiff's counsel in wrongful incarceration litigation, *contra id.* (finding the plaintiff's counsel to be relatively inexperienced in First Amendment law), this Court finds the following rates appropriate:

| Rank | Rate |
| --- | --- |
| Senior Partner | $500 |
| Junior Partner | $400 |
| Mid-Level Associate | $300 |
| Junior Associate | $225 |
| Senior Paralegal | $150 |
| Paralegal | $100 |

After reviewing plaintiff's counsel's affidavits, this Court finds the following application of those rates appropriate:

| **Employee** | **Rank** | **Rate** |
|---|---|---|
| Jon Loevy | Senior Partner | $500 |
| Arthur Loevy | Senior Partner | $500 |
| Locke Bowman | Senior Partner | $500 |
| Gayle Horn | Junior Partner | $400 |
| Tara Thompson | Junior Partner | $400 |
| Steve Art | Junior Partner | $400 |
| Mark Loevy-Reyes | Junior Partner | $400 |
| Megan Pierce | Mid-Level Associate | $300 |
| Kelly Jo Popkin | Mid-Level Associate | $300 |
| Imani Franklin | Junior Associate | $225 |
| Lauren Lebata | Senior Paralegal | $150 |
| Melinda Elk | Senior Paralegal | $150 |
| Valeria Barajas | Senior Paralegal | $150 |
| Monica Fuentes | Senior Paralegal | $150 |
| Hershey Suri | Paralegal | $100 |
| Destinie Brooks | Paralegal | $100 |
| Eric Blackmon | Paralegal | $100 |
| Grace Boney | Paralegal | $100 |
| Ixsel Zavala | Paralegal | $100 |
| Margaret Cunliffe | Paralegal | $100 |
| Andy Thayer | Paralegal | $100 |
| Maria Souto | Investigator | $100 |

b. *Reasonable Billing*

A reasonable rate is a function of the experience of the practitioner and the complexity of the work—partners may not charge partner-level rates for associate or paralegal-level work. *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) ("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them"); *see also Matalon v. Hynnes*, 806 F.3d 627, 638-39 (1st Cir. 2015) (giving wide discretion to district courts in applying the principle "that calculating a reasonable fee is . . . an assessment of the difficulty of the work involved and

the time reasonably expended); *Thayer*, 2017 WL 1190366, at *4 (partners should not bill partner-level hours for associate-level work).

For the most part, plaintiff's counsels' hours are reasonably allocated. However, three partners spent a significant amount of time drafting motions, work that is typically done by associates and reviewed by partners.[2] Those three partners will be reimbursed at the mid-level associate rate of $300 for those hours. Similarly, work on the ministerial portions of fee petitions is reimbursed at a reasonable paralegal rate of $100 an hour. *Cocroft v. Smith*, 148 F. Supp. 3d 57, 62 (D. Mass. 2015). From their descriptions, three attorneys worked on the fee petition, but only one described their work as legal. That attorney's hours may be reimbursed at the associate rate, as there are substantive legal issues raised in the fee petition. The other attorneys will be reimbursed at a paralegal rate for those hours.[3]

Finally, defendants argue that there should be no reimbursement for the services of an investigator where the case ultimately turned on the evidentiary record from the original criminal case. The defendants cite no case law for this argument. It does not strike this Court as unreasonable to hire an investigator in a case where the plaintiff's allegations were that the police lied and destroyed evidence, even if the plaintiff is unable to point to a specific piece of evidence the investigator discovered that was introduced at trial. The investigator might well have discovered inadmissible or borderline evidence that nonetheless guided plaintiff's counsel in the litigation. Furthermore, the plaintiff's investigator traveled to Worcester to simultaneously serve defendants and conduct her investigation. This Court finds $100 an hour a reasonable rate.

2. *Reasonable Hours*

---

[2] This Court finds the hours spent drafting as follows: Gayle Horn, 74.3 hours, Tara Thompson, 7 hours, Steve Art, 106.25 hours.
[3] This Court finds the ministerial hours by lawyers as follows: Steve Art, 2.5 hours, Megan Pierce, 8.3 hours.

The defendants argue that the case was severely overstaffed and could have been done by two attorneys on the theory that the case was *defended* by two attorneys. First, reasonable staffing for bringing and prosecuting a civil rights case is not identical to reasonable staffing for defending a civil rights case. Apart from the normal burden of proof the plaintiffs must shoulder, they must overcome qualified immunity and evidentiary hurdles. But more importantly, the defendants' objection to facing down eleven opposing attorneys is misleading.

First, five of those eleven attorneys request minimal hours (5% of the total hours and 7% of the total attorney hours). And the remaining six attorneys that request substantial hours were split into pre-trial and trial teams of three attorneys each. Thus, at any given time in the litigation, plaintiff had three counsel and defendants had two—given the structural differences noted above, not an unreasonable staffing discrepancy. A similar story plays out with paralegals. Of the ten paralegals that request reimbursement, two request only twelve hours of work and four paralegals request between three and four hours. The four remaining paralegals, like the attorneys, are split into pre-trial and trial teams, so that the plaintiff's attorneys were supported by two paralegals at any one time—the same amount the defendants' counsel employed. This Court does not find a reduction for overstaffing warranted.

Defendants also argue that because *their* counsel worked 536 hours between May 4, 2022, and February 13, 2023 and the plaintiff's counsel worked 770 hours during that time period, the time spent by defendants' counsel is reasonable and a 30% reduction is in order. Defendants cite no case law to support this position, which would allow an across-the-board reduction for a discrepancy in hours that is not even reflective of the total time spent on the case nor, in the Court's view, particularly egregious. The relevance of that time period is also unclear to this Court. This Court does not find a reduction for overbilling warranted on that ground.

Defendants argue that hours spent getting attorneys up-to-speed on the case or discussing and strategizing about the case are not billable and request a 10% reduction. *Hart v. Bourque*, 798 F.2d 519, 522-23 (1st Cir. 1986). Subsequent case law clarifies that *Hart* does not create a rule, but rather vests the District Court with discretion to eliminate *unnecessary* conferencing. *See Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) (moderating *Hart* by noting that "[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic."); *Guckenberger v. Boston University*, 8 F. Supp. 2d 91, 100-01 (D. Mass. 1998) ("Though elimination of these hours is tempting," conferencing is justified in complex and highly contested cases). Notably, the defendants do not argue that this was a simple case. *Contra Cocroft*, 148 F. Supp. 3d at 60-61 (noting an excessive force case was not complex where there was a single defendant and plaintiff, the litigation turned on a single incident, "[t]here was no *Monell* claim, no claim for punitive damages, little evidence which needed to be gathered and analyzed, no experts [etc.]"). This was a complex and highly contested case with multiple defendants, a *Monell* claim, a claim for punitive damages, significant evidence that needed to be gathered and analyzed, and multiple experts. That complexity and contestation has continued even after the jury verdict. This Court does not find the "conferencing" hours unreasonable.

### 3. Reductions and Increases of the Lodestar

The plaintiffs request a 50% increase for their success, arguing the case was risky and their success was extraordinary. Such increases are all but foreclosed by precedent. *Pérez-Sosa*, 22 F.4th at 321; *see also Lipsett*, 975 F.2d at 941-43 (casting severe doubt on the availability of enhancements for contingency and noting that the expertise and success of the lawyer is reflected

7

in their rate). This was an unusual case, but this Court does not find it justifies an increase. And while this Court recognizes the skill of plaintiffs' counsel, that is reflected in the lodestar. *Id.*

The defendants argue a 50% *decrease* is appropriate due to plaintiff's "mixed success." A downward variance is appropriate when a plaintiff only achieves "nominal success." *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1993) ($1 in damages cannot justify full fees). Many of the defendants as well as the theories that the plaintiff relied upon were dismissed, but an $8 million judgment is not a mere "nominal" success. This Court rejects the downward variance. Still, the plaintiff's losses along the way must be accounted for. In cases like this:

> When different claims for relief are not interconnected—that is, when the claims rest on different facts and legal theories—they are by definition severable and unrelated. Attorneys' fees normally should not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable claims . . . Withal, a plaintiff who has limited success from a claim-by-claim standpoint, but who nevertheless obtains substantial compensation or other important relief, usually will fare much better in the fee wars, even though some of her claims failed.

*Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 339 (1st Cir. 1997); *see also Lipsett*, 975 F.2d at 940 (if the work "included 'a common core of facts' or were 'based on related legal theories' . . . the award may include compensation for legal work performed on the unsuccessful claims") (citation omitted). The plaintiff's counsel did not delineate what they were working on in their fee petition. That means a blanket reduction is necessary if the claims are not severable. *Cf. id.* at 940-41 ("[w]here it would be an 'exercise in futility' to separate out the legal services rendered for each claim, the fee should simply be determined as a function of degree of success") (citation omitted).

The legal theories and facts in this litigation are neither wholly severable nor so overlapping that they are incapable of independent analysis. The failure to intervene and malicious prosecution legal theories, for instance, largely overlap factually and overlap to some

extent legally with the conspiracy claims insofar as they are all somewhat parasitic on a Due Process violation. The doctrine of Qualified Immunity permeated this litigation, and while this Court analyzed it claim-by-claim, it would be difficult for plaintiff's counsel to separate research done on the doctrine in that way. That said, although the underlying alleged facts were all of a similar type—they all supported allegations that plaintiff's conviction was the result of the bad actions of law enforcement—they were all distinct from each other.

In similar cases, this Court has issued a reduction for all hours worked on the case. *Cocroft*, 148 F. Supp. 3d. at 61-62 (reducing by 20% where plaintiff won at trial, but not on the claims that were the focus of her pre-trial preparation, after finding those claims were relatively severable). However, plaintiff only suffered minor losses after summary judgment. Although settlement negotiations failed, they are generally taxable when the plaintiff prevails. *Pérez-Sosa*, 22 F.4th at 322-23. And at trial the only claim that failed was the allegation that Doherty had suppressed information about his identification of Cosenza, a claim that was not the focus of plaintiff's case. Therefore, this Court issues a 20% reduction for pre-trial hours and a 5% reduction for post-trial work to account for limited success.

The plaintiff requested $1,766,002.50 in fees. After denying his proposed 50% enhancement, that is reduced to $1,177,335. After applying the local Worcester rates, it is further reduced to $793.977.50. Applying the reductions for mixed successes and overbilling, the final amount is $675,194.88.

| Employee | Rank | Rate | Pre-SJ Hours | Post-SJ Hours | Drafting Hours[4] | Ministerial Hours[5] | Total Hours | Award |
|---|---|---|---|---|---|---|---|---|
| Jon Loevy | Senior Partner | $500 | 16 | 7.5 | 0 | 0 | 23.5 | $9,962.50 |

---

[4] The drafting hours were all spent on pre-trial work and as such are subject to the 20% reduction.
[5] The ministerial hours were all spent on post-trial work and as such are subject to the 5% reduction.

| Name | Role | Rate | | | | | Hours | Total |
|---|---|---|---|---|---|---|---|---|
| Arthur Loevy | Senior Partner | $500 | 13.5 | 13.5 | 0 | 0 | 27 | $11,812.50 |
| Locke Bowman | Senior Partner | $500 | 0 | 416 | 0 | 0 | 416 | $197,600.00 |
| Gayle Horn | Junior Partner | $400 | 232.7 | 4.3 | 74.3 | 0 | 311.3 | $93,930.00 |
| Tara Thompson | Junior Partner | $400 | 258.25 | 0 | 7 | 0 | 265.25 | $84,320.00 |
| Steve Art | Junior Partner | $400 | 202.25 | 48.5 | 106.25 | 2.5 | 359.5 | $108,887.50 |
| Mark Loevy-Reyes | Junior Partner | $400 | 1 | 3.75 | 0 | 0 | 4.75 | $1,745.00 |
| Megan Pierce | Mid-Level Associate | $300 | 0 | 169.2 | 0 | 8.3 | 177.5 | $49,010.50 |
| Kelly Jo Popkin | Mid-Level Associate | $300 | 0 | 148 | 0 | 0 | 148 | $42,180.00 |
| Imani Franklin | Junior Associate | $225 | 78.1 | 0 | 0 | 0 | 78.1 | $14,058.00 |
| Lauren Lebata | Senior Paralegal | $150 | 89.75 | 0 | 0 | 0 | 89.75 | $10,770.00 |
| Melinda Elk | Senior Paralegal | $150 | 3.5 | 0 | 0 | 0 | 3.5 | $420.00 |
| Valeria Barajas | Senior Paralegal | $150 | 0 | 3.35 | 0 | 0 | 3.35 | $477.38 |
| Monica Fuentes | Senior Paralegal | $150 | 54.5 | 0 | 0 | 0 | 54.5 | $6,540.00 |
| Hershey Suri | Paralegal | $100 | 9.5 | 235.5 | 0 | 0 | 245 | $23,132.50 |
| Destinie Brooks | Paralegal | $100 | 0 | 144.25 | 0 | 0 | 144.25 | $13,703.75 |
| Eric Blackmon | Paralegal | $100 | 0 | 7 | 0 | 0 | 7 | $665.00 |
| Grace Boney | Paralegal | $100 | 0 | 11.75 | 0 | 0 | 11.75 | $1,116.25 |
| Ixsel Zavala | Paralegal | $100 | 0 | 11.5 | 0 | 0 | 11.5 | $1,092.50 |
| Margaret Cunliffe | Paralegal | $100 | 0 | 3.7 | 0 | 0 | 3.7 | $351.50 |
| Andy Thayer | Paralegal | $100 | 0 | 4 | 0 | 0 | 4 | $380.00 |
| Maria Souto | Investigator | $100 | 38 | 0 | 0 | 0 | 38 | $3,040.00 |

*4. Costs*

Plaintiff requests $86,605.41 in costs under 28 U.S.C. § 1920 and 42 U.S.C. § 1988. Under § 1988, the prevailing party is not limited to the costs in § 1920, but to "reasonable expenses, necessary for the prosecution of a case." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 17 (1st Cir. 2011). Defendants object to costs on several broad grounds, requesting an 80% reduction, but cite no case law. This Court rejects defendants' across-the-board reduction and examines their objections in turn.

First, defendants argue that "[s]ome of the more remarkable costs include repeated flights back and forth from Chicago IL, railway travel, hotel, car rental and other costs for client meetings, 'investigation,' and deposition preparation." That a Chicago law firm incurs travel costs to litigate in Worcester is not remarkable. However, out-of-state law firms must justify out-of-state costs by showing that no similar in-state services exist. *Schand v. McMahon*, 487 F. Supp. 3d 71, 84 (D. Mass. 2020); *see also Palmigiano v. Garrahy*, 707 F.2d 636, 637 (1st Cir. 1983) ("the out-of-state attorneys in question, who were associated with a public interest firm specializing in prison matters, had unique competence in the subject matter of this litigation"). Plaintiff's counsel argues Loevy & Loevy is a specialized firm that specializes in wrongful incarceration cases, but this Court finds that plaintiff could have found comparable representation in Boston. Therefore, only travel costs from Boston to Worcester are justified. *Schand*, 487 F. Supp. 3d at 86 (allowing travel expenses for out-of-state counsel that in-state counsel would have incurred). This reduces costs by **$15,858.06**.[6]

Some courts in this district have not allowed car rentals to be reimbursed, arguing that lawyers should use taxis. *Marshall v. Rio Grande River Ltd. P'ship*, 162 F. Supp. 3d 54, 60 n. 6

---

[6] This figure includes the $10,117.82 in hotel costs that the defendants object to on overstaffing grounds.

11

(D. Mass. 2016). But here many of the rentals are for travel from Boston to Worcester. The plaintiff's bill of costs shows that the Amtrak from Boston to Worcester or using a "ride-share" service are comparable in price, if not more expensive, than renting a car for the day. Taking the commuter rail might have been cheaper, but the cost of the commuter rail is per-person whereas a rental car's cost is per-ride. For Boston to Worcester trips, at least where there are multiple lawyers, this Court finds car rentals are not unreasonable and will allow them in this case. However, plaintiff's counsel also rented a car for the week of the trial to go from their hotel to the courthouse. Those costs are discounted. The total cost of the week-long rental was $1,241.36. This Court estimates that using a taxi or ride-share service would cost an average of $40 a day, and so over a six-day trial transportation should have cost them $240. Thus, a reduction of $1,001.36 is in order. This Court has reviewed the bill of costs and cannot infer what "other costs" the defendants believe are self-evidently unreasonable.

Defendants argue that the deposition costs are duplicative, insofar as plaintiff has requested costs for both the video recordings of depositions as well as the transcripts. At least for one of the witnesses the video deposition was shown at trial. The costs of the other video recordings are deducted, amounting to $1,145.

Defendants object to ten attorneys receiving reimbursement for *pro hac vice* admission. Presumably, the defendants object to so *many* admissions, as out-of-state lawyers have no choice but to pay a $100 fee to argue before this Court. The defendants cite no case law that such fees are not reimbursable under § 1988. This Court finds that fees for six attorneys are reasonable in this case. Not all the attorneys granted *pro hac vice* status filed motions or argued before the Court, and there is no requirement that every attorney who works on a brief is admitted. Accordingly, a $400 deduction is in order.

The defendants also object to $19,485 costs in expert fees for the plaintiff's expert, Dennis Waller, because they filed an unsuccessful motion to strike his testimony. Generally, expert fees are allowed under § 1988, including travel costs. *See, e.g.*, *Pitochelli v. Town of Johnston*, 996 F.2d 1209, at *2 (1st Cir. July 6, 1993) (unpublished); *Doe v. Mass. Dep't of Correction*, No. 17-cv-12255-RGS, 2019 WL 2913969, at *3 (D. Mass. July 8, 2019); *see also Marshall*, 162 F. Supp. 3d at 60 (finding travel costs for an expert justified). This Court is aware of no doctrine that allows a non-prevailing party to refuse to pay for an expert simply because *they* feel a qualified expert's testimony was unhelpful to the jury. Furthermore, the subject that Waller testified on—photo arrays—was relevant to both the damages award as well as one of the Due Process claims returned against Hazelhurst. Given the jury verdict, the Court is in no position to judge the usefulness of Waller's testimony to the plaintiff, whatever reservations the Court may have as to its efficacy.

After reducing out-of-state costs ($15,858.06), the car rental ($1,001.36), recordings of depositions ($1,145), and excessive *pro hac vice* applications ($400), this Court finds $68,200.99 in costs proper.

## Conclusion

For the reasons above, the plaintiff's motion is ***denied*** in part and ***granted*** in part. The plaintiff is awarded $675,194.88 in attorney's fees and $68,200.99 in costs.

**SO ORDERED**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**
