UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATALE COSENZA,<br><br>                  Plaintiff,<br><br>v.<br><br>CITY OF WORCESTER, Massachusetts, KERRY HAZELHURST, JOHN DOHERTY, T.J. COAKLEY, MARK RICHARDSON, ALLAN BURNES, DANIEL BENEDICT, BRIAN DONOHUE, ROBERT TRUGEON, DAVID GRADY, DARLENE ROCHEFORD, and AS-YET UNKNOWN WORCESTER POLICE OFFICERS,<br><br>                  Defendants. | CIVIL ACTION<br>NO. 4:18-10936-TSH |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTIONS TO APPOINT SPECIAL PROCESS SERVER, FOR A WRIT OF GARNISHMENT, AND FOR TRUSTEE PROCESS (Docket Nos. 304, 316, and 317)**

6/7/2023

**HILLMAN, S.D.J.**

Natale Cosenza ("plaintiff") brought this § 1983 action alleging constitutional claims against various defendants stemming from his conviction and sixteen-year incarceration for armed burglary. A jury found two of those defendants liable for violations of plaintiff's civil rights and awarded compensatory and punitive damages. This Court has also awarded attorneys' fees and costs. Defendants have not taken steps to pay the judgment nor have they declared bankruptcy. The plaintiff has invoked this Court's ancillary, post-judgment jurisdiction to enforce the judgment in a series of motions. (Docket No. 304, Docket No. 316, Docket No. 317).

For the reasons below, the motion to appoint a process server is **_granted_**, the motion to issue a writ of garnishment is **_denied without prejudice_**, and the motion to institute trustee process is **_denied without prejudice_**.

## **Background**

After this Court denied defendants' post-trial motions, (Docket No. 274), and their motion to stay enforcement of the judgment, (Docket No. 294), the plaintiff received a writ of execution on March 7, 2023 from this Court. The plaintiff sent this writ to the defendants' employer, the City of Worcester ("the City"), the City Solicitor, and the City Clerk with a request to garnish 25% of the disposable income of the defendants. The City did not comply and allegedly took the position that the writ had to be served by someone authorized to effect service by the Court. Accordingly, the plaintiff moved for this Court to appoint a process server on March 23, 2023. (Docket No. 304). The defendants did not file an opposition to that motion.

On April 24, 2023, the plaintiff filed a motion for a "Writ of Garnishment." He requested that this Court order 25% of the defendants' disposable income be garnished. (Docket No. 316). The proposed order of garnishment was directed against the defendants themselves, not the City. On April 27, 2023 the plaintiff filed a motion to institute trustee process against various financial institutions where the defendants' allegedly hold money in savings accounts. (Docket No. 317).

In their response, defendants allege that the plaintiff has engaged in "tortious" behavior by serving copies of the writ of execution on the defendants' family members, at their workplace, and leaving copies of the execution at their residences. The defendants do not deny that they have taken no steps to pay the judgment, but argue that "[p]laintiff's counsel has not responded to multiple requests to confer with Defendants' counsel." Plaintiff's counsel avers that "Defendants have taken no steps to begin making payments, and they instead have resisted

efforts to arrange payment." Neither party has presented this Court with evidence of the other party's behavior.

## Analysis

### 1. Ancillary Jurisdiction

After judgment is entered this Court retains jurisdiction to enforce that judgment, and such jurisdiction is clear when a plaintiff is using processes such as garnishment and attachment. *U.S.I. Prop. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 496-97 (1st Cir. 2000). However, this Court's authority is circumscribed by the procedures of Massachusetts state courts in post-judgment actions and a failure of the plaintiff to follow that procedure invalidates any post-judgment writ he may seek. *Aetna Cas. & Sur. Co. v. Markarian*, 114 F.3d 346, 349-50 (1st Cir. 1997); *see also Gabovitch v. Lundy*, 584 F.2d 559, 560-61 (1st Cir. 1978) ("the first sentence of [Fed. R. Civ. Proc. Rule 69(a)] expresses a limitation on the means of enforcement of money judgments and does not create a general power to issue writs of execution in disregard of the state law incorporated by the rest of the Rule.").

### 2. Trustee Process

#### a. Trustee Process Procedure

Normally, in Massachusetts a trustee process is a pre-judgment process to ensure that funds or property owned by the defendant but held by third parties is not lost. However, the process is available after judgment. *Latorraca v. Taniki Financial Corp.*, 393 Fed. Appx. 730, 731 (1st Cir. 2010). The process proceeds in two steps: "attachment" and "charging." At the attachment stage, the plaintiff must prove there is "a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the trustee process over and above any liability insurance" Mass. R. Civ. Proc. 4.2(c). In a

post-judgment context, because the judgment has already occurred in their favor, the analysis focuses on the existence of funds. *Latorraca*, 393 Fed. Appx. at 731-32. Procedurally, this is done by filing a complaint, a motion for trustee process, and an affidavit. Mass. R. Civ. Proc. 4.2(c). The affidavit must "set forth specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that he believes this information to be true." Mass. R. Civ. Proc. 4.1(h).

If that standard is met, the proceedings move to the charging stage. A summons is issued to the trustee to appear at a hearing to determine if the defendant's assets are held by them and how much, if any, of the defendant's assets must be transferred to the plaintiff. *Latorraca*, 393 Fed. Appx. at 732. Prior to the hearing, the trustee must file an answer disclosing "fully and particularly what goods, effects or credits, if any, of the defendant" they possess. M.G.L. c. 246, § 10. Notice is given to the defendant who may attend the hearing and make objections. Mass. R. Civ. Proc. 4.2(c). After the hearing, which may require fact-finding, the trustee is "charged" if any funds are recoverable and judgment is entered against them. *Latorraca*, 393 Fed. Appx. at 732.

The practice in Massachusetts courts, if the trustee process is instituted after a suit has been brought, is to require an amended complaint, though not a separate action. *Cf. Chanowski v. Ross*, No. ESCV201401787A, 2014 WL 7920997, at *2 n. 4 (Mass. Super. Dec. 15, 2014) (requiring plaintiffs to amend their complaint to correctly identify trustee defendants). This practice comports with the text of Mass. R. Civ. Proc. Rule 4.2(c), which requires "filing the complaint with the court, together with a motion for approval of attachment on trustee process" and "affidavit or affidavits meeting the requirements set forth in Rule 4.1(h)." In the interest of judicial efficiency, this amended complaint must name all the trustees against whom the plaintiff

seeks to institute trustee process. The plaintiff argues that no complaint is necessary in post-judgment proceedings, but this Court is unpersuaded by that distinction.

### b. Writ of Garnishment (Docket No. 316)

In his reply, plaintiff clarifies that he wishes to institute trustee process against the City to garnish the defendants' wages. This was not clear in his initial filing and plaintiff has not followed the appropriate procedure; he must include the City in his amended complaint, make a motion for trustee process, and file an affidavit as he did with regard to the financial institutions. His motion is *denied* without prejudice.[1]

### c. Savings Accounts (Docket No. 317)

Plaintiff has generally followed the appropriate procedure for instituting the "attachment" phase of the process against the financial institutions allegedly holding the defendants' savings accounts. Defendants misstate the order of the process, arguing that a "final determination" must be made before the "attachment" phase can begin; that objection is unfounded. Defendants also argue that the plaintiff has not filed a separate complaint. The First Circuit has been clear that state procedures must be scrupulously followed in post-judgment proceedings. *Aetna*, 114 F.3d at 350. As such, the plaintiff must include the trustees in their amended complaint naming the financial institutions they wish to institute trustee process against. The motion is *denied* without prejudice.

### d. Sovereign Immunity / Public Policy

---

[1] Defendants' objections to the plaintiff's procedures in enforcing a writ of execution are not applicable to the trustee process. The Court further notes that an evidentiary hearing is built into the trustee process procedure, obviating any Due Process concerns. *See generally N. Georgia. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975); *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337 (1969). There is no requirement of an evidentiary hearing prior to attachment because, at that stage, no money has been withdrawn.

In addition to their procedural objections, defendants argue that collection proceedings are barred against them due to sovereign immunity and public policy. Defendants argue that sovereign immunity bars garnishment of their wages on two theories: that municipalities are protected by sovereign immunity and that garnishing a public officer's wages is a transfer of money from the state treasury not authorized by statute.

Under "federal" sovereign immunity,[2] only the state and "arms of the state" are protected. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). Municipalities are not. *Id.* (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690 n. 54 (1978)). Nor does sovereign immunity protect public money that is transferred to municipalities. Such a theory, for which the defendants cite no relevant case law, would swallow the rule announced in *Will* and prevent municipalities from paying judgments against them because it would apply with as much force to judgments as it would to garnishment proceedings.

In contrast, Massachusetts' "internal" sovereign immunity does include municipalities. *See, e.g.*, *Bain v. City of Springfield*, 424 Mass. 758, 762, 678 N.E.2d 155, 159 (1997). The general rule is that the Commonwealth "cannot be impleaded into its own courts except with its consent," including in attachment proceedings. *Randall v. Haddad*, 468 Mass. 347, 354, 10 N.E.3d 1099, 1105 (2014). However, that internal sovereign immunity has no effect on suits

---

[2] This immunity is occasionally referred to as originating with the Eleventh Amendment. *See, e.g.*, *Will*, 491 U.S. at 70. However, in more recent cases the Supreme Court has described the immunity's origin as implicit in the structure of the Constitution, reasoning that the Eleventh Amendment merely "confirmed" that states retain much of their sovereign immunity after joining the Union. *Franchise Tax. Bd. v. Hyatt*, 139 S. Ct. 1485, 1495-96 (2019). Because it is derived from the constitutional structure, it is the Supreme Court, not the states, that ultimately defines the contours of that immunity—what a "State" is. Defendants do not distinguish between that conception of sovereign immunity and the "internal" sovereign immunity a state may articulate regarding its ability to be hauled into its own courts based on its own laws, and courts have not yet devised a consistent terminology for distinguishing between the two conceptions. For the purposes of this order, the Court uses the adjectives "internal" and "federal" to distinguish them.

based on federal law, because internal sovereign immunity is no more than state common law. *Randall*, 468 Mass. at 356-57, 10 N.E.3d at 1106-07. Nor does Fed. R. Civ. Proc. Rule 69(a) import Massachusetts' internal sovereign immunity, as it only requires the *procedure* of state enforcement proceedings to be followed, not substantive rules such as immunities. *See Apparel Art Int'l, Inc. v. Amertex Enter. Ltd.*, 48 F.3d 576, 582 (1st Cir. 1995) (Rule 69(a) only incorporates "those provisions of state law which *specifically* govern the enforcement of judgments," not state rules like res judicata which may arise in enforcement proceedings) (emphasis added); *see also Rio Grande Cmty. Health Ctr., Inc. v. Armendariz*, 792 F.3d 229, 231–32 (1st Cir. 2015) (expressing doubt that Rule 69 prevents attachment of Commonwealth's funds). Similar to the problem above, under either of defendants' theories the City could be successfully sued under a *Monell*-type claim under § 1983, refuse to pay, then argue supplemental collection procedures are unavailable due to Rule 69(a)'s alleged importation of Massachusetts's internal sovereign immunity, leaving the judgment-creditor without a remedy. Therefore, this Court need not consider whether Massachusetts' internal sovereign immunity would protect the City from this type of collection.

Defendants also argue that it is "well-established" that garnishing public officers' wages is against public policy, citing mostly out-of-state cases, almost none decided in the last century. Insofar as these limitations are imported by Rule 69(a), the case law in Massachusetts does not establish a rule that municipalities cannot be subject to trustee attachment. *See generally*, *Hooker v. McLennan*, 236 Mass. 117, 127 N.E. 626 (1920) (finding trustee process could be initiated against municipalities, at least under certain conditions); *cf. Dewey v. Garvey*, 130 Mass. 86, 87 (1881) (rejecting trustee process against a state-run hospital for the debts of its employee—an institution that is likely an "arm of the state" under *Will*). Recent case law suggests garnishing of

public officers' wages is commonplace in Massachusetts. *See, e.g.*, *Giuliano v. Kennedy*, 60 Mass. App. Ct. 1122, 805 N.E.2d 531 (Mar. 19, 2004) (unpublished) (allowing trustee process against the MBTA to garnish wages following judgment). The other cases the defendants cite turn on interpretations of long-repealed statutes, not policy considerations. *Chealy v. Brewer*, 7 Mass. 259, 260-61 (1811); *Union Tpk. Rd. v. Jenkins*, 2 Mass. 37, 39 (1806).

Defendants repeat their arguments regarding sovereign immunity and public policy in opposing trustee process against the financial institutions. These arguments fail not only for the reasons above, but border on nonsensical where the attachment is not even nominally directed at a public entity. Defendants take the position that money originating in the treasury is forever shielded by sovereign immunity. In other words, *any* public employee who owes money for *any* reason may block *any* attempts to collect *any* property or funds that they acquired with wages from the treasury. Such an argument is extremely close to being sanctionable under Fed. R. Civ. Proc. Rule 11(b)(2); *see also Singer & Talcott Stone Co v. Wheeler*, 6 Ill. App. 225, 227 (1880) ("[I]t would be absurd to say that a debtor with the money in his pocket, should be excused from paying his creditor, because his money happened to have been earned by him as a public officer."). Indeed, all of the case law defendants cite concerns plaintiffs who attempted to directly attach the salaries of public employees. This Court rejects defendants' arguments.

## **Conclusion**

For the reasons above, the plaintiff's motion to appoint a process server is ***granted***, the plaintiff's motion for a writ garnishment is ***denied without prejudice***, and the plaintiff's motion to institute trustee process is ***denied without prejudice***.

**SO ORDERED**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**
